Terry D. PAPROCKI,
Petitioner–Appellant,

v.

Dale FOLTZ, Respondent–Appellee.

No. 87–1114.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 10, 1987.

Decided March 1, 1989.

Neil H. Fink, John R. Minock (argued), Detroit, Mich., for petitioner-appellant.

Edgar L. Church, Jr. (argued), Asst. Atty. Gen., Lansing, Mich., for respondent-appellee.

Before NELSON and BOGGS, Circuit Judges, and EDWARDS, Senior Circuit Judge.

DAVID A. NELSON, Circuit Judge.

This is an appeal from a district court judgment denying an application for a writ of habeas corpus. The petitioner, Terry D. Paprocki, killed his estranged wife during a struggle in their home. He was charged with murder and stood trial in a Michigan state court. Mr. Paprocki maintained that he had acted in self-defense, but a jury found him guilty of murder in the second degree. His conviction was upheld on appeal. Mr. Paprocki's principal contention in the habeas proceeding is that the state trial court's instructions to the jury were fatally flawed because they could have been interpreted as assigning the defendant the burden of proof on the self-defense issue.

Although self-defense is an affirmative defense in some jurisdictions—in Michigan's neighboring state of Ohio, for example—and although the United States Constitution does not forbid any state from giving the defendant the burden of proof on this issue, see *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), the common law of Michigan requires the prosecution to bear the burden of proving the absence of self-defense. *Berrier v. Egeler*, 583 F.2d 515, 521 (6th Cir.), *cert. denied*, 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed. 2d 347 (1978). Mr. Paprocki now asserts, in effect, that a Michigan conviction obtained under a jury charge inconsistent with Michigan's traditional common law rule must be set aside by the federal courts even though the Michigan courts themselves decided to let the conviction stand, and even though nothing in the federal constitution prevents Michigan from abandoning its traditional rule in favor of a rule comparable to Ohio's.

Whatever the merits of this assertion, and whether or not Mr. Paprocki's failure to object to the jury instructions contemporaneously gave rise to a procedural bar that forecloses habeas relief in any event, see *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), we are satisfied that the instructions, taken as a whole, pass muster under any application of the Michigan rule that we have authority to enforce. We think the district court was correct in rejecting the instructional error claim, just as we think it was correct in rejecting the claims of prosecutorial misconduct and ineffective assistance of counsel that Mr. Paprocki also advanced. The denial of the writ will be affirmed.

## I

Mr. & Mrs. Paprocki were married in 1973. They had two children. On May 10, 1982, after a violent quarrel, Mrs. Paprocki left home with the children and went to Canada. Both parties then instituted divorce proceedings. A Michigan judge awarded Mrs. Paprocki temporary custody of the children, but enjoined her to keep them within the state. Her attorney advised her to bring the children back from Canada. Mrs. Paprocki did so, returning to the marital home on June 22, 1982.

The couple quarreled the next evening, and according to Mr. Paprocki's testimony his wife attacked him with a knife. He claimed that he succeeded in knocking the knife out of her hand, whereupon she poked him in the eye with her fingers and started choking him. He responded by choking her, he testified, but when she failed to release her grip he tried to punch her in the jaw; his aim was off, and he hit her in the throat instead.

Mr. Paprocki ran to a neighbor's house at this point, he testified, and asked that help be summoned. The police arrived 15 or 20 minutes later, but were unable to revive Mrs. Paprocki. Mr. Paprocki was placed under arrest and advised to remain silent. He invoked his right to do so.

The living room showed no signs of a struggle, aside from a broken wine glass. A knife was found in the room, but the police could not obtain fingerprints from it. There were bruises on Mrs. Paprocki's neck but none on her husband's; he had three scratches below his right eye. Police officers testified, without objection, that Mr. Paprocki did not request medical attention and never inquired about the condition of his wife. When told at the police station that his wife had been pronounced dead, Mr. Paprocki said nothing.

A county medical examiner testified that Mrs. Paprocki died of manual strangulation. He testified that the body would have to be deprived of oxygen for about three to seven minutes before a person would die from this type of strangulation. Under skillful cross examination, the medical examiner admitted that a brief interruption in the flow of oxygen down the windpipe could bring on a paralysis of the respiratory center, with death following several minutes later. On redirect, however, after reexamining a photograph showing the contusions on Mrs. Paprocki's neck, the medical examiner reiterated his conclusion that death had been caused by asphyxia due to manual strangulation.

In closing argument the prosecutor suggested that Mr. Paprocki's failure to inquire about his wife's condition indicated a lack of concern and showed that he had not acted in self-defense. The prosecutor also argued, without objection, that Mr. Paprocki had physically abused or assaulted his wife in the past, and that she was afraid of him.

The trial court gave a comprehensive and balanced jury charge, stating, among other things, that the jurors should begin their deliberations with the presumption of innocence foremost in their minds; that the burden of proving guilt rests with the prosecution throughout the entire trial and never shifts to the defendant; that every element of the crime charged must be proven by evidence beyond a reasonable doubt; that for the defendant to be guilty of murder in the second-degree, he must have acted under circumstances which did not justify, excuse or lessen the crime; that the elements which the prosecution had to prove beyond a reasonable doubt were that the deceased died in Oakland County on or about June 23 or 24 as a result of having been manually strangled by Mr. Paprocki, and that he was guilty of a crime; that the killing of one human being by another may be entirely innocent, depending on the state of mind with which it is done; that a killing is not murder if it is justified or excused; that the crime of murder may be reduced to voluntary manslaughter under certain circumstances; that one of the defenses raised in this case was that the defendant acted in lawful self-defense; and that when a person acts in lawful self-defense, he is not guilty of any crime.

In further reference to self-defense, the court charged the jury as follows:

"In considering whether or not the Defendant acted in lawful self defense, you should carefully consider all the evidence in light of the following rules: first, at the time of the act, the Defendant must have honestly believed that he was in danger of being killed or receiving serious bodily harm. If he so believes, he may immediately act in defending himself. Even to the extent of taking human life, if necessary.

"Although it may now turn out that the appearances were false and that he was mistaken as to the extent of the real danger, he is to be judged by the circumstances as they appeared to him at the time of the act. Second, the degree of danger which must be feared is serious bodily harm or death. A person is not justified in killing or inflicting great bodily injury upon another in order to protect himself from what appears to be slight or insufficient injury—insignificant injury. In deciding whether at the time, the Defendant feared for his life or safety, you should consider all the surrounding circumstances. The condition of the parties, including their relative strength. Whether the other party was armed with a dangerous weapon, or had other means to injure the Defendant. The nature of the threat or attack of the other party. Any previous acts of brutality or threats of the other party of which the Defendant was aware.

"Third, the act or acts taken by the Defendant must have appeared to the Defendant at the time to be immediately necessary. A person is justified in using only such an amount of force as may appear necessary at the time to defend himself from danger. In considering whether the degree of force appeared to be necessary, you should consider the excitement of the moment and what alternatives the Defendant knew existed. A Defendant in a state of excitement is not held to fine distinctions of judgment about how much force is necessary for him to use to protect himself."

The jury returned a verdict of guilty of murder in the second-degree, and Mr. Paprocki was sentenced to imprisonment for 20 to 80 years. The Michigan Court of Appeals affirmed the conviction, and the Michigan Supreme Court denied leave to appeal. Mr. Paprocki then brought his habeas corpus action under 28 U.S.C. § 2254. The district court, in the person of Ralph M. Freeman, J., entered a final judgment denying the writ. This appeal followed.

## II

■ The trial court was not asked to give Michigan Standard Jury Instruction 7:9:06, and it did not do so. That instruction, we are told, reads as follows:

"The defendant is not required to prove that he acted in self-defense. The prosecution has the burden of proof of guilt beyond a reasonable doubt, and this includes the responsibility of proving that the defendant was not acting in self-defense."

Although there was no objection to the instructions as given, Mr. Paprocki now contends that the jury should not have been told that self-defense had been "raised" as a defense and should not have been asked to consider "whether or not" the defendant acted in self-defense.

Mr. Paprocki asks us to excuse the procedural bar that normally results from the absence of objection at trial. He argues that in the direct appeal the Michigan Court of Appeals addressed the merits of his challenge and thus waived any procedural bar. Alternatively, he urges that his trial counsel's alleged ineffectiveness constituted good cause for the failure to object.

The Michigan Court of Appeals did not conduct the sort of review of the jury instructions that presumably would have been undertaken had there been a timely objection to them; instead, the court inquired only whether affirmance of the conviction would "result in manifest injustice" because of the alleged instructional error. *Michigan v. Paprocki*, No. 69499, slip op. at 2–3 (Mich.Ct.App. May 7, 1984). In this connection the state court did, necessarily, allude to the merits of the instructions. If this limited discussion is tantamount to

overlooking a procedural default, then Mr. Paprocki need not show cause for the failure to object and prejudice from that failure. *Rice v. Marshall*, 816 F.2d 1126, 1129 (6th Cir.1987); *Cook v. Foltz*, 814 F.2d 1109, 1111–12 (6th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 119, 98 L.Ed.2d 77 (1987).

What the state court of appeals did, as we understand it, was to enforce the procedural bar while reserving the right to excuse it if necessary to prevent manifest injustice. We would be loath to adopt an exception to the "cause and prejudice" rule that would discourage state appellate courts from undertaking the sort of inquiry conducted by the Michigan court, and we do not believe that the state court's explanation of why the jury instructions resulted in no manifest injustice can fairly be said to have constituted a waiver of the procedural default. Even if there had been such a waiver, however, Mr. Paprocki would not be entitled to the relief he seeks in this case—for the instructions, as we view them, would not warrant habeas relief in any event.

When reviewing a state criminal conviction in habeas proceedings, we do not assess challenged jury instructions on the same basis as if they had been given in a federal case coming before us on direct appeal:

"Before a federal court may overturn a conviction resulting from a state trial ... it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."

*Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). We do not undertake our review

"in artificial isolation, but ... [rather] in the context of the overall charge. *Boyd v. United States,* 271 U.S. 104, 107 [46 S.Ct. 442, 443, 70 L.Ed. 857] (1926). While this does not mean that an instruction by itself may never rise to the level of constitutional error, see *Cool v. United States,* 409 U.S. 100 [93 S.Ct. 354, 34 L.Ed.2d 335] (1972), it does recognize that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction."

*Id.* 414 U.S. at 147, 94 S.Ct. at 400.

The trial of Mr. Paprocki, viewed as a whole, was not fundamentally unfair, and the jury instructions challenged here did not shift the burden of proof to the defendant. The jury was told very clearly that the prosecution had the burden of proving Mr. Paprocki's guilt beyond a reasonable doubt in light of the presumption of his innocence. The jury was told that "the burden of proving guilt is upon the prosecution throughout the entire trial. At no time does the burden of proof shift to the defendant." The jury was told that the prosecution had the burden of proof as to each element of the offense, and, as we read the charge, absence of justification or excuse for the killing was identified as one of the elements. This pattern was repeated in the instructions as to the lesser included offense of involuntary manslaughter.

When the instructions reached the self-defense issue, they described self-defense as an "excuse" or "justification." Nowhere did they say that Mr. Paprocki bore the burden of establishing that excuse or justification. A rational and attentive juror could only have concluded that the prosecution's burden of proving absence of excuse or justification required the prosecution to bear the burden of negating self-defense— the sole excuse or justification mentioned in the charge.

Our decision in *Berrier v. Egeler,* 583 F.2d 515 (6th Cir.), *cert. denied,* 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 347 (1978), is not inconsistent with this conclusion. There we disapproved of the following instruction on self-defense:

"You are to determine from all of the evidence whether facts constituting such reasonable cause have been established and *unless such facts constituting such reasonable cause have been established by the defense* in this case you cannot acquit on the ground of self-defense...."

583 F.2d at 519 (emphasis supplied). In the face of this express shifting of the burden of proof to the defendant, we held that other instructions placing the burden on the prosecution were not enough to salvage the conviction. There was no corresponding shifting of the burden at Mr. Paprocki's trial. Here the jury was simply told that self-defense had been "raised," and that the jury would have to consider "whether or not" the defendant acted in self-defense. This is a far cry from an instruction requiring the critical facts "to have been established by the defense." The words "whether or not" imply nothing at all as to how the self-defense issue is to be decided if the evidence is equally balanced.

In *United States v. Corrigan*, 548 F.2d 879 (10th Cir.1977), the Tenth Circuit held that an instruction as to self-defense (on which the prosecution bore the burden of proof) shifted the burden to the defendant because the jury was told "*the defendant has raised* the defense of self defense." *Id.* at 883 (emphasis in the original). The appeals court reversed the defendant's conviction.

There are at least three important features of the *Corrigan* case that distinguish it from the case before us. First, the challenged instruction in *Corrigan* used the active voice, advising the jury that it was "*the defendant*" who had raised self-defense. In the case at bar the use of the passive voice kept that information from the jury; for all the jury could tell, the trial judge raised the issue himself.

In *Corrigan*, secondly, the court accepted the proposition that the general instructions on the burden of proof could not cure a specific erroneous instruction " 'unless the general statement clearly indicates that its consideration must be imported into the defective instruction.' " *Corrigan*, 548

F.2d at 882 (quoting *DeGroot v. United States*, 78 F.2d 244, 253 (9th Cir.1935)). Absent from the *Corrigan* opinion is an reference to instructions telling the jury that the prosecution bore the burden of proof on each element of the crime, including the absence of justification or excuse. In the case at bar, by contrast, the jurors were given just such instructions before the trial judge explained the particular justification or excuse that was at issue. The instructions on the burden of proving each element of the crime were clearly intended to be imported into the instructions on self-defense.

Third, *Corrigan* was a direct appeal from a federal court conviction, whereas here we are considering the judgment of a state court in collateral proceedings. This is an important distinction:

"The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal."

*Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977) (footnote omitted).

The instructions received by the jury that convicted Mr. Paprocki did not run counter to the Michigan rule assigning the burden of proof on the issue of self-defense, and they certainly did not violate any generalized concept of fundamental fairness. We cannot say, under these circumstances, that the failure of Mr. Paprocki's trial counsel to request Standard Instruction 7:9:06 constituted ineffective assistance of counsel, or that the trial court's failure to include the instruction *ex mero motu* rendered the trial constitutionally infirm.

### III

The alleged prosecutorial misconduct, which forms the second ground for the petition for habeas relief, falls into two categories. First, Mr. Paprocki says that his right to silence was violated by testimony and closing argument about the lack of concern he exhibited after the police had

arrested him and his failure to request medical attention. Second, he contends that the prosecutor acted improperly by intentionally eliciting inadmissible evidence, arguing facts not in evidence, and attacking Mr. Paprocki's character. His trial counsel did not object, for the most part, and Mr. Paprocki concedes that he must show cause for the absence of objection and prejudice from it.

The only "cause" suggested for the procedural default is ineffectiveness of counsel. If Mr. Paprocki did not receive legal representation that was adequate under the Sixth Amendment, then he has shown cause for the failure to object contemporaneously to the alleged prosecutorial misconduct. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397 (1986). Mr. Paprocki points both to counsel's failure to request Standard Instruction No. 7:9:06 and to the failure to object to the alleged prosecutorial misconduct. In addition, Mr. Paprocki filed in the district court an affidavit from a pathologist showing, it is claimed, that counsel ought to have called a pathologist to rebut the testimony of the medical examiner. We are urged to remand this case to the district court for an evidentiary hearing on counsel's performance and the issue of cause.

As we have already seen, Mr. Paprocki's arguments as to the jury instructions are not persuasive. Neither are we persuaded that an evidentiary hearing is necessary to consider the other alleged deficiencies of counsel.

### A

■ Depending on the particular facts of each case, if "there are factual issues in dispute and an insufficient record upon which to resolve ... [a] legitimate claim[ ]" of ineffective assistance of counsel, a district court must hold an evidentiary hearing to determine whether counsel's ineffectiveness was the cause of a procedural default. *Alcorn v. Smith,* 781 F.2d 58, 60 (6th Cir.1986).

Counsel would be ineffective for purposes of the Sixth Amendment if the representation "fell below an objective standard of reasonableness, ... and ... there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986) (citing *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)). The performance part of the inquiry focuses on "[t]he reasonableness of counsel's performance ... from counsel's perspective at the time of the alleged error and in light of all the circumstances...." *Kimmelman v. Morrison,* 477 U.S. at 381, 106 S.Ct. at 2586. This inquiry is highly deferential:

> "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. *Engle v. Isaac,* 456 U.S. 107, 133–34 [102 S.Ct. 1558, 1574–75, 71 L.Ed.2d 783] (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' See *Michel v. Louisiana,* [350 U.S. 91,] 101 [76 S.Ct. 158, 164, 100 L.Ed. 83 (1955) ]. There are countless ways to provide effective assistance in any given case."

*Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065. Ultimately, the burden is on a defendant to show that counsel's performance resulted in "an actual breakdown of the adversarial process" so as to deprive the defendant of a fair trial. *Unit-*

*ed States v. Cronic,* 466 U.S. 648, 657–58, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984).

**B**

 Generally speaking, a state may not make use of a defendant's silence after the defendant has been warned of his right to remain silent. *Doyle v. Ohio,* 426 U.S. 610, 617, 96 S.Ct. 2240, 2244, 49 L.Ed.2d 91 (1976). But neither this general proposition, nor the corresponding likelihood that a trial judge would sustain an objection to questions or arguments regarding the defendant's silence, inevitably compels the conclusion that counsel who fails to object to such questions or argument is ineffective. Here the prosecution merely argued that Mr. Paprocki's impassiveness and failure to request medical attention showed that he was not grief-stricken over his wife's death and that he had not been poked in the eye. Nothing was made of Mr. Paprocki's failure to protest his innocence or failure to respond to questions from the police. We doubt that the argument was improper, but if it was it suffices to say that defense counsel himself tried to use Mr. Paprocki's silence to show that he was stunned and that it was thus understandable that he went to his neighbor's house rather than attempting to revive his wife on his own. We cannot second guess counsel's decision to try to make affirmative use of Mr. Paprocki's silence, and in the context of the entire record the alleged improprieties are small potatoes.

The other allegations of prosecutorial misconduct are as follows. First, Mr. Paprocki attempts to attribute to the prosecution the testimony of Mr. Davey, the deceased's divorce attorney, which he characterizes as "an unconscionable and deliberate attempt to prejudice Petitioner by giving narrative, unresponsive answers." Pointing to state evidentiary rules, Mr. Paprocki contends that "Davey and the prosecutor tried repeatedly to convey to the jury that [Mrs. Paprocki] was afraid of Petitioner because he was a wife beater."

Second, Mr. Paprocki challenges the prosecution's attempts to contradict his version of the events of May 10. Some of these attempts were rebuffed upon objection by defense counsel; others were successful. Lastly, at one point during closing argument, the prosecution appeared to suggest that he had information from Mrs. Paprocki's mother and from neighbors that the jury had not heard.

 In assessing this conduct, and the failure to object, we consider whether the conduct rendered Mr. Paprocki's trial fundamentally unfair. *Donnelly v. DeChristoforo,* 416 U.S. 637, 642–43, 94 S.Ct. 1868, 1871–72, 40 L.Ed.2d 431 (1974). Among the factors to which we look are the pervasiveness of any misconduct, its egregiousness, its deliberateness, and its weight in light of the evidence of guilt. *Angel v. Overberg,* 682 F.2d 605, 608 (6th Cir.1982). A prosecutor may conduct himself in a manner that "deserves ... condemnation," but still is not egregious enough to deprive the defendant of a fair trial. *Darden v. Wainwright,* 477 U.S. 168, 179, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986).

 Here the alleged misconduct did not come close to rendering the trial fundamentally unfair. The challenged acts were isolated, not pervasive, and there seems to have been no deliberate flouting of the rules. The trial as a whole was quite unexceptionable, as we read the record.

**C**

Mr. Paprocki gave the district court an affidavit signed by Werner Spitz, M.D., the Chief Medical Examiner for Wayne County, Michigan, in which Dr. Spitz said that he had reviewed "the available medical records, autopsy report, photographs of the deceased, and complete trial testimony of Dr. Thomas Petinga," the medical examiner who testified for the prosecution. The affidavit said that Dr. Petinga was "materially incorrect regarding the process of death by asphyxiation," and "was clearly erroneous when he testified that for death to occur, the deceased had to have been strangled manually from for [sic] three (3) to seven (7) minutes." The affidavit said that "a blow with a fist to [Mrs. Paprocki's] throat ... could cause her to stop breathing and culminate in death...."

Dr. Spitz did not opine that the cause of death was in fact a blow to the throat; what he said, rather, was that such a blow could have been the cause of death. Dr. Petinga admitted as much during his testimony. Dr. Petinga corrected the portion of his testimony that Dr. Spitz said was clearly erroneous, as Dr. Spitz ought to have known if he had really reviewed Dr. Petinga's complete trial testimony.

We see no need for a hearing on the failure of the defense to call a pathologist. The effectiveness of the cross-examination in establishing the medical facts to which Dr. Spitz would have testified shows that defense counsel's decision not to call a pathologist was well within the range of professional competence.

IV

The jury found beyond a reasonable doubt that Mr. Paprocki used more force than was justified and more than appeared necessary to him. By his own admission, Mr. Paprocki believed himself sufficiently strong to knock his wife unconscious with one blow. There was nothing fundamentally unfair in the trial, and there was nothing unreasonable in the jury's conclusion that Terry Paprocki intentionally took the life of his wife without justification or excuse.

The denial of the writ of habeas corpus is AFFIRMED.

GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge, dissenting.

Where in our instant case the wife had a knife in her hand in the fatal altercation and the deadly blow was struck by her husband's fist, I believe omission of the paragraph of the Michigan Standard Criminal Jury Instruction (CJI) 7:9:06 entitled "Burden of Proof—Self Defense," which reads as follows:

The defendant is not required to prove that he acted in self-defense. The prosecution has the burden of proof of guilt beyond a reasonable doubt, and this includes the responsibility of proving that the defendant was not acting in self-defense.

requires remand for new trial.