986 F.2d 1423
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Calvin FORD, Defendant-Appellant.
 No. 92-1066.
 United States Court of Appeals, Sixth Circuit.
 Feb. 24, 1993.
 
 Before RYAN and SILER, Circuit Judges, and LIVELY, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 Calvin Ford appeals from his conviction and sentence on ten counts of various charges of making false statements, acceptance of bribes by a public official, and wire fraud. On appeal, Ford assigns as error the district court's (1) denial of Ford's motion for new trial on the basis of insufficiency of the evidence; (2) failure to conduct an evidentiary hearing on Ford's claim of ineffective assistance of counsel;[1] (3) failure to conclude that improper prosecutorial argument prejudiced Ford; (4) increasing of Ford's offense level by two levels for his leadership role; (5) increasing of Ford's offense level for both multiple bribes and more than minimal planning; and (6) calculations as to the specific offense characteristics for accepting bribes.
 
 
 2
 Because we conclude that all of these contentions lack merit, we affirm both the judgment of conviction and the sentence.
 
 I.
 FACTS
 
 3
 Calvin Ford was indicted by a grand jury in the Eastern District of Michigan in a twelve-count indictment charging him with five counts of making false statements, in violation of 18 U.S.C. § 1001; five counts of acceptance of a bribe by a public official, in violation of 18 U.S.C. § 201; and two counts of wire fraud, in violation of 18 U.S.C. § 1343. The charges arose from conduct in the course of his employment with the U.S. Army Tank-Automotive Command (TACOM) during the period from late 1988 to early 1989. Ford was employed as a government contract specialist administering a program to supply spare parts to the El Salvador military under a Blanket Purchase Agreement (BPA).
 
 
 4
 Under the BPA, a number of companies were eligible to submit bids for the supply of parts. Ford was authorized to accept only the lowest bid. One of the eligible companies was Big Truck Company, which employed Randall English. English was the person named in the indictment as having bribed Ford.[2] The government alleged that as a result of being bribed, Ford altered Big Truck's bids so that he could award them contracts on which they had not been the lowest bidder, and also told English to alter some bids that were significantly lower than competitors' bids in order to bridge the gap between Big Truck's bids and those other bids. English did not work on commission and apparently garnered no direct benefit from having Ford treat Big Truck Company favorably. His testimony at trial, however, indicated that he initially thought his transfers of money to Ford were loans, and only later realized that Ford was treating them as permanent transfers, and thus as bribes. English testified that by that time, he did not know how to extract himself from the situation.
 
 
 5
 The government called four witnesses in addition to English. Three were coemployees of Ford; their testimony, as well as accompanying documentary evidence, strongly indicated that Ford had altered contractor quotes and wrongfully made awards. Another witness was a salesperson from a contractor competitive with Big Truck; he testified that he believed Ford had attempted to solicit a bribe from him. The sole defense witness, in contrast, was the defendant himself. Ford's testimony was that the money paid to him by English constituted repayment of money invested by Ford in English's classic automobile restoration business.
 
 
 6
 A jury convicted Ford on all but two counts of accepting bribes. After the unfavorable verdict, Ford moved for a new trial, alleging both insufficiency of the evidence and ineffective assistance of counsel. The district court denied Ford's motion on both grounds. Noting that Ford made only conclusory statements and adduced no evidence in support of his motion, and further noting that the evidence adduced by the government at trial was overwhelming and uncontradicted, the court concluded that his "insufficiency of the evidence argument is utterly unconvincing." In denying Ford's ineffective assistance of counsel argument, which consisted of allegations that his attorney failed to call certain witnesses and to introduce certain documents that would have helped his case, the district court concluded that Ford "categorically fail[ed] to sustain his burden of proof...." The court noted that Ford failed to provide affidavits indicating that the witnesses were ready and willing to offer favorable testimony; further, the testimony would not have been directly relevant to the charges, because the witnesses at best would have been able to testify only as to the defendant's character and the problems in the BPA program. The court further deemed the attorney's failure to submit seventy-four allegedly favorable documents to also be an unavailing argument for Ford, because the documents were either irrelevant or were introduced by the government at trial for use against Ford.
 
 
 7
 At sentencing, Ford's combined adjusted offense level was 20, which included 1) a two-level increase as an adjustment for his leadership role in the offense; 2) a two-level increase for the specific offense characteristic of multiple bribes; and 3) a four-level increase for the specific offense characteristic of a benefit received by the beneficiary of the bribery scheme of more than $20,000. His criminal history category was I. With a resulting guideline imprisonment range of 33 to 41 months, the court sentenced Ford to 36 months on each of the ten counts, to be served concurrently.
 
 
 8
 The defendant timely appeals.
 
 II.
 A.
 
 9
 Ford first argues that there was insufficient evidence to convict him of making false statements, acceptance of bribes, or wire fraud.[3] This court reviews the district court's grant or denial of a motion for new trial under an abuse of discretion standard. United States v. Ashworth, 836 F.2d 260, 266 (6th Cir.1988). An abuse of discretion exists when a reviewing court is firmly convinced that a mistake has been made. In re Bendectin, 857 F.2d 290, 307 (6th Cir.1988), cert. denied, 488 U.S. 1006 (1989). Rule 33 of the Federal Rules of Criminal Procedure provides that "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." Fed.R.Crim.P. 33. The narrow standard of review corresponds to the rationale underlying Rule 33: that "the trial judge, not an appellate court reading a cold record, can best weigh the errors against the record as a whole to determine whether those errors in the conduct of the trial justify a new trial." United States v. McBride, 862 F.2d 1316, 1320 (8th Cir.1988). In reviewing a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 10
 There cannot be any serious doubt that the district court did not abuse its discretion in denying Ford's motion for a new trial on the basis of insufficiency of the evidence. It is readily apparent that the government produced overwhelming evidence of Ford's guilt as to all three crimes. The jury simply chose to reject Ford's version of the facts, as it was entitled to do. Ford's first assignment of error fails to present any meaningful challenge to the judgment of conviction.
 
 B.
 
 11
 We next consider Ford's claim that he was entitled to an evidentiary hearing on his ineffective assistance of counsel claim. We conclude that no such hearing was required. First, Ford failed to request that the district court hold an evidentiary hearing. We note, moreover, that he utterly failed to demonstrate that any of his alleged potential defense witnesses or any of the documents could conceivably have helped his case. He had the opportunity to present affidavits to the district court or to explain how the documents would have vindicated him. In a claim of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), "the burden is on a defendant to show that counsel's performance resulted in 'an actual breakdown of the adversarial process' so as to deprive the defendant of a fair trial." Paprocki v. Foltz, 869 F.2d 281, 287 (6th Cir.1989) (citation omitted). Ford's motion raised no significant factual dispute as to whether he was denied effective assistance of counsel, and on this record, the district court had no reason to believe that an evidentiary hearing was warranted.
 
 C.
 
 12
 In her closing argument, the assistant U.S. attorney included the following comments:
 
 
 13
 And the Judge is going to tell you that you can evaluate the testimony of witnesses, and I trust you to evaluate the testimony of those witnesses with your common experience and with what you know, and in order for you to say Randy English--Calvin Ford is not guilty, you're going to have to say that Randy English is a liar, and I tell you, members of the jury, he didn't look like a liar; he didn't act like a liar; he didn't speak like a liar; and if he's been guilty of the crimes that he's committed or if he's been guilty of being stupid or if he's been guilty of bad judgment, then that is something for him to determine and for the law to determine with regard to him.
 
 
 14
 Ford's attorney did not object to this argument at trial, and Ford did not raise it as an issue in any post-trial motions. He now contends, however, that the government's statement implies that the defendant must have looked, talked, and acted like a liar during his testimony, and that such an argument amounts to prosecutorial misconduct warranting reversal.
 
 
 15
 Whether the government's closing argument amounted to prosecutorial misconduct and whether the argument rendered the trial "fundamentally unfair" are mixed questions of law and fact for de novo review by this court. United States v. Clark, No. 91-2345, slip. op. (6th Cir. Jan. 6, 1993). Not only does the government's argument not rise to the level of reversible error, it cannot even be categorized as misconduct. The argument was nothing more than fair commentary on the credibility of the witness. Our conclusion is reinforced by the fact that the jury was specifically instructed to closely examine the testimony of English because he was an informant, thus calling into question the veracity of his testimony.
 
 D.
 
 16
 Ford makes two arguments regarding the calculation of his combined offense level for sentencing, neither of which was raised below. He first argues that he should not have received an enhancement for his leadership role in the offense, because English was not Ford's subordinate in the offense. He next contends that to enhance his sentence for both multiple bribes and for more than minimal planning was, in effect, to twice enhance his sentence for a single instance of conduct.[4]
 
 
 17
 When a defendant fails to raise a sentencing guideline challenge to the district court, this court ordinarily will not address the issue absent a showing of plain error or manifest injustice. See United States v. Nagi, 947 F.2d 211, 213 (6th Cir.1991), cert. denied, 112 S.Ct. 2309 (1992). Because Ford has demonstrated neither plain error nor manifest injustice, we will not reverse his sentence on either of these grounds.
 
 E.
 
 18
 Ford finally argues that the district court erred in considering the benefit received by Big Truck as a result of Ford's more favorable treatment when it calculated the specific offense characteristics of his bribery conviction. He contends that the measure should have been the difference between what the government paid under the contracts and what the government would have paid had it not been for Ford's actions.
 
 
 19
 Appellate review of sentences under the guidelines is governed by the due deference standard, and the appropriate standard of review varies, depending on whether an issue is factual, legal, or mixed. United States v. Carroll, 893 F.2d 1502, 1505-06 (6th Cir.1990). This court renders de novo review of the district court's legal conclusions. United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991).
 
 
 20
 Ford's argument is not well-taken. U.S.S.G. § 2C1.1 sets out the specific offense characteristics for receiving a bribe, and prescribes the value of the benefit received[5] as the proper consideration:
 
 
 21
 The "value of the benefit received or to be received" means the net value of such benefit. For example, if a $150,000 contract on which $20,000 profit was made was awarded in return for a bribe, the value of the benefit received in return is $20,000.
 
 
 22
 U.S.S.G. § 2C1.1, comment. (n. 2). The government contends, and Ford does not disagree, that the value figure was computed using the net profit figures from Big Truck Company, which showed a net gain of $28,549.00 on the contracts wrongfully received during the bribery scheme. We therefore conclude that the district court correctly applied § 2C1.1 to calculate the specific offense characteristics of Ford's bribery convictions.
 
 III.
 
 23
 Both the judgment of conviction and the sentence are AFFIRMED.
 
 
 
 [1]
 Ford does not raise his claim, introduced in the district court, that he should have been granted a new trial on the basis of ineffective assistance of counsel. We therefore consider this issue abandoned on appeal. See Boyd v. Ford Motor Co., 948 F.2d 283, 284 (6th Cir.1991), cert. denied, 112 S.Ct. 1481 (1992)
 
 
 [2]
 English was also indicted by the government for his involvement in this scheme. He testified at trial pursuant to a Rule 11 plea agreement under which he agreed to cooperate with the government
 
 
 [3]
 Ford's claim regarding insufficiency of the evidence arises out of the denial of his motion for a new trial, as opposed to a motion for acquittal
 
 
 [4]
 The government points out that although Ford was actually sentenced for three different crimes, only the bribery counts--which carried the highest adjusted offense level--were significant for computing his combined offense level, because all the crimes were grouped together as related counts. That is, any adjustments or increases for specific offense characteristics related to the wire fraud and false statement counts had no impact on his final combined adjusted offense level, because those counts carried an adjusted offense level (16) lower than the bribery counts (20). Thus, although Ford received an enhancement for more than minimal planning in connection with the false statements and wire fraud counts, this enhancement did not affect his combined adjusted offense level. Thus, were we to reach the merits of this aspect of Ford's appeal, we would find the issue moot
 
 
 [5]
 In full, § 2C1.1 prescribes that the greater of the bribe or of the benefit received should be considered; here, the benefit received is greater than the amount of the bribes