39 F.3d 1181
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dolores Jean FEDERICO, Petitioner-Appellant,
v.
Joan YUKINS, Respondent-Appellee.
 No. 93-2424.
 United States Court of Appeals, Sixth Circuit.
 Nov. 2, 1994.
 
 Before: KRUPANSKY, GUY, and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Dolores Jean Federico, pro se, petitions this court for a writ of habeas corpus. Federico argues, inter alia, that misconduct on the part of the prosecutor in addition to numerous trial court errors deprived her of her right to due process. Finding Federico's arguments to be without merit, we affirm.
 
 I.
 
 2
 In August 1983, a jury convicted Federico of assault with intent to rob while armed, Mich.Comp.Laws Sec. 750.89, and possessing a firearm during the commission of a felony, Mich.Comp.Laws Sec. 750.227b. The circumstances that led to Federico's conviction are as follows.
 
 
 3
 As of October 1982, Federico, who was then 25 years old, had been dealing heroin and marijuana for several years. George McCue and Ricki Sparks were two of Federico's regular heroin clients. Evidently, Federico did not always insist that McCue and Sparks pay immediately upon their receipt of heroin. On some occasions, Federico would "front" heroin in exchange for McCue's and Sparks' promise that they would make the appropriate payments at a later date. As a result of this arrangement, McCue and Sparks both owed Federico money in mid-October 1992.[1]
 
 
 4
 Exactly how these debts were to be satisfied is a matter of some dispute. At trial, two separate theories--one offered by McCue and evidently supported by Sparks and the other offered by Federico--were advanced. According to McCue, Federico proposed that she, McCue, and Sparks rob a third party. In response, McCue and Sparks suggested a possible victim; namely, Jess Brown, a friend of McCue and, like Federico, a marijuana dealer.
 
 
 5
 The plan called for McCue to contact Brown under the guise of brokering a drug transaction. McCue, in his van, would then transport Brown to the location at which this transaction was supposed to take place. In the meantime, Sparks and Federico were to drive Federico's car to a remote location, which happened to be along the same route that McCue and Brown were to use. Sparks and Federico were to park and open the car's hood to make it appear as though the car had experienced mechanical difficulties. Federico then was to flag down McCue's van for assistance. When Brown and McCue emerged from the van, Federico was to rob them both, Brown of the $250 he had brought with him to purchase marijuana and McCue of $100.[2]
 
 
 6
 Sparks also testified at Federico's trial, providing the following account of the events that transpired on October 21, 1982, the day the plan was set in motion. He recalled that he and Federico drove to the predetermined meeting place and that Federico had in her possession a .38 caliber pistol. As they awaited McCue's and Brown's arrival, Sparks hid in front of Federico's car. Sparks stated that after McCue's van arrived on the scene, he heard muffled voices and then a sound like a firecracker. Federico then ran back to her car, threw the gun into the car, closed the hood, and drove off. Distressed, she explained to Sparks that the pistol had discharged accidentally. Brown died later that evening of a gunshot wound to the head.
 
 
 7
 Federico told a different story. Federico testified that she, and not Brown, was the intended victim of a "set up," one that Sparks and McCue devised. She stated that she went to the spot where the shooting occurred to consummate a drug deal that Sparks claimed to have arranged. Although Sparks was not there at the time, McCue arrived in his van accompanied by someone she did not know. Federico then informed McCue that the deal was off apparently because she was reluctant to go forward in the presence of a stranger. When she tried to get into her car, McCue knocked her to the ground. As this was happening, the person who had come with McCue got out of the van. A struggle ensued between McCue and Federico, during which a gun that McCue had been carrying fell from his person. Federico picked up the gun and, pointing it at McCue, directed McCue and his companion to get back into the van. It was at this point, Federico recounted, that Sparks appeared. Federico surmised that Sparks probably had been hiding out in a nearby wooded area. Sparks, approaching Federico from behind, grabbed the gun Federico was holding. The gun discharged, and the man who had accompanied McCue then dropped to the ground.
 
 
 8
 McCue, Sparks, and Federico all fled the scene. McCue and Sparks were arrested soon after the shooting. Federico, on the other hand, managed to elude the police for several weeks. She eventually surrendered to authorities on December 7, 1982. McCue and Sparks agreed to testify against Federico as part of a plea agreement pursuant to which both were charged only with assault with intent to rob while armed.[3]
 
 
 9
 Federico was bound over for trial in Michigan state court on four counts: one count of felony murder; one count of assault with intent to rob while armed; and two counts of possession of a firearm during the commission of a felony. On August 11, 1983, a jury found Federico not guilty of felony murder, but guilty of both assault with intent to rob and a felony-firearm charge. Federico subsequently was sentenced to terms of imprisonment (to be served consecutively) of 20 to 60 years on the assault charge and two years on the felony-firearm charge.
 
 
 10
 The Michigan Court of Appeals affirmed Federico's conviction and sentence, and the Michigan Supreme Court denied her leave to appeal. Federico then filed her first petition for habeas relief, which petition was dismissed without prejudice in 1987 on the ground that she had failed to exhaust her state court remedies. Federico then moved the Wayne County, Michigan, Circuit Court for relief from judgment, which motion was denied. Federico filed an application for leave to appeal the denial of her motion with the Michigan Court of Appeals and the Michigan Supreme Court, but in both instances her application was denied.
 
 
 11
 Her state court remedies thus exhausted, Federico, in 1992, filed a second petition for a writ of habeas corpus in United States district court. The matter was then referred to a magistrate judge, who recommended that the petition be dismissed. The district court adopted the magistrate judge's recommendation and dismissed Federico's petition in September 1993. This appeal followed.
 
 II.
 
 12
 Federico raises a number of issues on appeal. These issues will be addressed in turn.
 
 
 13
 A. Prosecutorial Misconduct & Ineffective Assistance of Counsel
 
 
 14
 Federico first argues that the conduct of the prosecutor compromised her right to a fair trial. Specifically, Federico contends that the prosecutor acted improperly by: (1) introducing into evidence a letter (sent by Federico to her husband) that the prosecution claimed contained an admission of guilt;[4] (2) questioning her on cross-examination as to the drug trafficking business in general and her activities within that business in particular, even though the crime for which she was on trial was not drug-related; (3) asserting a motive to explain her commission of the crimes in question without an evidentiary basis to do so;[5] and (4) eliciting testimony from Sparks and McCue indicating they had previously made statements to the police that were consistent with their testimony at trial.[6] Because we conclude that Federico, by failing to assert contemporaneous objections at trial, has procedurally defaulted with respect to virtually all of these claims, we afford these claims only limited review.
 
 
 15
 In Wainwright v. Sykes, 433 U.S. 72 (1977), the Supreme Court made clear that federal habeas relief may be barred on claims that the petitioner has failed to present to the state courts in accordance with the state's procedural rules. The Supreme Court subsequently clarified this pronouncement once in Harris v. Reed, 489 U.S. 255, 263 (1989) (holding that a procedural default will not preclude habeas review "unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar"), and then again in Coleman v. Thompson, 501 U.S. 722, 735 (1991) (holding that habeas review may be had only if the state court did not clearly and expressly rely on adequate and independent state grounds and if the state opinion "fairly appeared to rest primarily on resolution of [petitioner's federal] claims, or to be interwoven with those claims."); see also Couch v. Jabe, 951 F.2d 94, 96 (6th Cir.1991).
 
 
 16
 Whether a state court rested its holding on a procedural default so as to bar federal habeas review is a question we review de novo. Couch, 951 F.2d at 96. The state decision to which we look in answering this question is "the last explained state-court judgment." Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991); see also id. at 803 ("[W]here ... the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").
 
 
 17
 Here, the last reasoned state court judgment on Federico's claim of prosecutorial misconduct is the opinion issued by the Michigan Court of Appeals affirming her conviction and sentence.[7] A close reading of this opinion reveals that the court premised its disposition of this claim on procedural grounds; namely, Federico's failure to object contemporaneously to the various instances of alleged misconduct. To be sure, the court did address the merits of Federico's allegations, but it did so only to determine whether a failure to consider the allegations would result in a miscarriage of justice. See App. at 304-11; see also McBee v. Abramajtys, 929 F.2d 264 (6th Cir.1991).
 
 
 18
 In Paprocki v. Foltz, 869 F.2d 281 (6th Cir.1989), we considered an analogous situation. There, the habeas petitioner challenged the jury instructions. Although the petitioner conceded that he had not objected to the instructions in dispute during his trial, he maintained that habeas review nevertheless was not foreclosed because the Michigan Court of Appeals had considered the merits of his challenge and thereby waived any procedural bar. The Paprocki court, however, held otherwise, stating:
 
 
 19
 The Michigan Court of Appeals did not conduct the sort of review of the jury instructions that presumably would have been undertaken had there been a timely objection to them; instead, the court inquired only whether affirmance of the conviction would "result in manifest injustice" because of the alleged instructional error. In this connection the state court did, necessarily, allude to the merits of the instructions. If this limited discussion is tantamount to overlooking a procedural default, then Mr. Paprocki need not show cause for the failure to object and prejudice from that failure.
 
 
 20
 What the state court of appeals did, as we understand it, was to enforce the procedural bar while reserving the right to excuse it if necessary to prevent manifest injustice. We would be loath to adopt an exception to the "cause and prejudice" rule that would discourage state appellate courts from undertaking the sort of inquiry conducted by the Michigan court, and we do not believe that the state court's explanation of why the jury instructions resulted in no manifest injustice can fairly be said to have constituted a waiver of the procedural default.
 
 
 21
 Id. at 284-85 (citations omitted).
 
 
 22
 Federico's failure to object to the conduct of the prosecutor at trial is not, in and of itself, fatal to her claim. A petitioner that has procedurally defaulted on a particular claim still may have that claim reviewed by a federal court if she can "show cause for the procedural default and prejudice attributable thereto." Murray v. Carrier, 477 U.S. 478, 485 (1986).[8] Evidently, Federico attributes her default to ineffective assistance of counsel. See Petitioner's Brief at 31 ("Had [petitioner's] trial attorney presented the available mitigating evidence, a much different picture of Petitioner would have emerged, a much more sympathetic picture, a true picture."). In this way, Federico's prosecutorial misconduct claim and her claim of ineffective assistance of counsel, though distinct claims, actually intertwine. If Federico, indeed, did not receive legal representation that is adequate under the Sixth Amendment, then she "has shown cause for the failure to object contemporaneously to the alleged prosecutorial misconduct." Paprocki, 869 F.2d at 287.
 
 
 23
 Counsel is ineffective for purposes of the Sixth Amendment if it falls "below an objective standard of reasonableness ... and ... there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). Our assessment of the performance of Federico's trial counsel is informed by the Supreme Court's seminal decision, Strickland v. Washington, 466 U.S. 668 (1984), in which the Court instructed:
 
 
 24
 It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case.
 
 
 25
 Id. at 689 (citations omitted); see also Paprocki, 869 F.2d at 287 ("Ultimately, the burden is on a defendant to show that counsel's performance resulted in 'an actual breakdown of the adversarial process' so as to deprive the defendant of a fair trial.") (quoting United States v. Cronic, 466 U.S. 648, 657 (1984)).
 
 
 26
 Initially, we note that Federico did not present many of the specific assertions of ineffective assistance of counsel in her second petition for a writ of habeas corpus. In any event, we are persuaded that the legal representation rendered by Federico's trial counsel passes constitutional muster. Whether Federico's counsel's failure to object constituted ineffective assistance of counsel, of course, must be judged in light of what was conceivably objectionable. Our review of the record leads us to the conclusion that the various instances of alleged prosecutorial misconduct were not so clearly egregious that Federico's counsel can be faulted for failing to object to them. In short, Federico has not overcome the presumption that her counsel's failure to object was the result of something other than sound trial strategy. For this reason, we hold that neither Federico's prosecutorial misconduct claim nor her ineffective assistance of trial counsel claim can be sustained.[9]
 
 
 27
 Similarly, we reject as meritless Federico's claim that she was denied effective assistance of appellate counsel. As evidence of the alleged ineffective representation, she notes that her appellate counsel not only failed to advance a claim of ineffective assistance of trial counsel, even though her trial counsel had not objected at appropriate moments to the conduct of the prosecutor, but also failed to "federalize" issues that he raised on appeal, which failure, it is urged, precluded their review in a federal habeas proceeding.
 
 
 28
 The test for analyzing ineffective assistance of counsel claims is the same regardless of whether the trial counsel's or the appellate counsel's performance is at issue; that is, the defendant must establish, first, that counsel's performance was objectively unreasonable and, second, that she suffered prejudice as a result (i.e., that but for counsel's deficient performance, she would have had a reasonable probability of success on appeal). See Bowen v. Foltz, 763 F.2d 191, 194 n. 3 (6th Cir.1985). Here, Federico cannot prevail on the first prong of the above analysis, and, accordingly, we do not proceed to consider the issue of prejudice.[10]
 
 B. Sentencing Issues
 
 29
 Next, Federico takes issue with the manner in which her sentencing proceeding was conducted. First, she contends that the sentencing judge acted improperly when he stated that Federico's "only remorse in this matter is, really, with the fact that [she was] apprehended and convicted." (App. 757) As to this contention, however, the Michigan Court of Appeals ruled that the judge's statement is "not comparable to a consideration of a refusal to admit guilt[,]" which may be prohibited under Michigan law. (App. 312.) We are in full agreement with state appellate court's ruling, and we see no reason to elaborate on this matter.
 
 
 30
 Equally unavailing is Federico's claim that the sentencing judge erred by imposing on her a sentence that was harsher than those received by her codefendants. Federico's position, however, cannot withstand scrutiny, for the existence of a sentencing discrepancy among defendants will not, itself, give rise to a constitutional violation. See United States v. Fry, 831 F.2d 664, 667 (6th Cir.1987) ("A defendant relying upon the argument that he has received a disproportionate sentence must establish more than the mere fact that other defendants have received less harsh sentences for similar crimes."); United States v. Harris, 761 F.2d 394, 403 (7th Cir.1985) ("Disparity between the sentence imposed on a defendant who pleads guilty and the sentence imposed on a defendant who is convicted after trial does not, standing alone, establish that the latter has been penalized for exercising his constitutional rights.").
 
 
 31
 We also reject Federico's assertions that the sentencing judge disregarded her presentence report and that she was not given the opportunity to speak in mitigation of her sentence. The former assertion is without foundation in the record, and, in any event, "[t]he failure to use a presentence report is not of constitutional dimensions." Katz v. King, 627 F.2d 568, 576 (1st Cir.1980). The latter assertion, too, finds little support in the record. Indeed, it appears that the sentencing judge specifically invited Federico's comments, stating: "Mrs. Federico, do you wish to say anything?" (App. 753.) To which Federico responded: "No, Your Honor. I said a lot of it in my letter to you." (Id.)
 
 
 32
 Federico's claims of error with respect her sentencing proceeding therefore must fail.
 
 C. Jury Instructions
 
 33
 In her penultimate argument, Federico contests several aspects of the jury instructions issued by the trial court. For instance, she contends that the court's felony-firearm instruction required the jury to find her guilty of either felony murder or assault with intent to rob while armed as a prerequisite to considering the felony-firearm charge. As such, she submits that the instruction violated the Michigan Supreme Court's decision in People v. Lewis, 330 N.W.2d 16 (Mich.1982). Federico also takes issue with the trial judge's instruction on her felony murder charge. In this regard, she notes that the trial court informed the jury that the felony underlying the charge was armed robbery, despite the fact that the armed robbery charge had been dismissed by the examining magistrate at Federico's preliminary examination. In her third and last challenge to the jury instructions, Federico argues that the trial court erred when it did not "instruct on unintentional shooting or self-defense and when it instructed her jury that they could convict her on the basis of the accomplice testimony if they believed the testimony or if it proved [her] guilt beyond a reasonable doubt." (Petitioner's brief at 42.)
 
 
 34
 As pointed out by the magistrate judge, however, Federico has procedurally defaulted with respect to each of these claims. We agree with the magistrate judge that Federico can show neither cause for defaulting nor prejudice resulting therefrom. Assuming arguendo, however, that Federico had not procedurally defaulted in this instance, we still would find against her on the merits. For example, as to her claim regarding the court's felony-firearm charge, we note that "[a] jury instruction which violates only state law cannot provide a basis for habeas corpus relief." Wood v. Marshall, 790 F.2d 548, 551 (6th Cir.1986) (emphasis added); see also Murphy v. Sowders, 801 F.2d 205, 212 (6th Cir.1986). Moreover, as we instructed in Wood:
 
 
 35
 In a habeas proceeding, allegedly improper jury instructions must be shown to have infected the accused's trial to such a degree as to constitute a clear violation of due process. The petitioner must show more than that the instructions are undesirable, erroneous, or universally condemned.
 
 
 36
 790 F.2d at 551 (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). Here, Federico cannot meet this heavy burden. Without condoning instructions that infringe upon a jury's right to reach a compromise decision, we note that the circumstances of this case do not give rise to "a clear violation of due process." The jurors obviously credited the government's theory (supported by the testimony of McCue and Sparks) that Brown was the intended victim of a plot that Federico not only participated in, but also masterminded. After all, if the jurors had believed Federico's account of the events that led to Brown's death (an account that had Federico as the victim), there would have been no need to exercise leniency in Federico's favor even if they had wanted to since she would not have been guilty of even the lesser felony-firearm charge. Our review of the record convinces us that there was more than ample evidence from which a reasonable juror could conclude that Federico committed the offense at issue; namely, assault with intent to rob while armed. As such, Federico's argument premised on the trial court's felony-firearm instruction must fail. See Murphy, 801 F.2d at 212-13.
 
 
 37
 Additionally, we reject Federico's claim regarding the trial court's felony-murder instruction. Whatever technical error the court may have committed in this regard is, in our view, harmless in light of the fact that Federico ultimately was acquitted of her felony-murder charge. That Federico was acquitted of murder also means that Federico cannot now complain of the trial court's failure to instruct on unintentional shooting and self-defense, for these defenses are, as the court found, relevant to a murder, and not an assault, charge. Also without merit is Federico's assertion that the court erred by implying that she could be convicted even if the government had not proved guilt beyond a reasonable doubt so long as the jurors believed the testimony of her alleged accomplices. Although the court certainly misstated the law in using the disjunctive, we share the state appellate court's view that, in the context of the entire trial, this misstatement does not warrant the relief Federico seeks. See Cupp v. Naughten, 414 U.S. 149, 146-47 (1973).[11]
 
 D. Other Issues
 
 38
 Finally, Federico, without elaboration, urges this court to consider a number of issues that she presented to the district court.[12] The magistrate judge evaluated and rejected each of these issues in a thorough and well-reasoned report and recommendation, which the district court adopted. We are not convinced that these rulings should be disturbed.
 
 
 39
 For the foregoing reasons, the decision of the district court denying Federico's petition for a writ of habeas corpus is AFFIRMED.
 
 
 
 [1]
 While McCue and Sparks estimated that their debts exceeded $200, Federico set the figure at $155
 
 
 [2]
 The $100 was, in actuality, Federico's, not McCue's. By robbing McCue, and retrieving her money, Federico evidently had hoped to lend an air of authenticity to the scheme
 
 
 [3]
 McCue and Sparks were sentenced to terms of imprisonment of four and one-half years to 15 years
 
 
 [4]
 The letter contained the following language: "I thought that we could have a nice life together, but all of this shit happened. It did happen the way they said it happened, but that is not important. What is important to me right now is where my daughter is." (App. 307.)
 
 
 [5]
 The prosecution's theory evidently was that Federico needed money to pay her suppliers and "to destroy her reputation as an easy mark on the streets." (App. 305.)
 
 
 [6]
 Federico also claims that the prosecutor engaged in misconduct by: "act[ing] as his own witness" (Petitioner's Brief at 19); making certain " 'testimonial' assertions" (id. at 20); introducing an admission of guilt (i.e., the letter noted above) on cross-examination, rather than in his case in chief; repeatedly informing the jury that two prosecution witnesses (apparently Sparks and McCue) had agreed to testify truthfully against her as part of their respective plea bargains; attempting to " 'educate' the jurors during voir dire that accomplices should be held to the same standard as everyone else" (id. at 25); "denigrat[ing]" Sparks' and McCue's plea bargain (id.); and misstating the law on at least three separate occasions (id. at 26). Because Federico, however, did not advance any of these arguments in her second petition for a writ of habeas corpus (i.e., the petition that is the subject of the instant appeal), we need not address them here. See Chandler v. Jones, 813 F.2d 773, 777 (6th Cir.1987); Lyle v. Koehler, 720 F.2d 426, 429 (6th Cir.1983) ("Having failed to present this theory in his petition to the District Court, appellant cannot now obtain review of the claim from this Court."). Even if we were to consider these arguments on the merits, however, we would conclude that they would not entitle Federico to the relief she seeks
 
 
 [7]
 As noted above, subsequent to this opinion, Federico filed with the Wayne County Circuit Court a motion for relief from judgment. In denying this motion, the court briefly alluded to Federico's claims of prosecutorial misconduct. The court, however, did not consider the merits of these claims, noting that the identical claims already had been considered and rejected by the state court of appeals
 
 
 [8]
 Even a petitioner who does not show cause and establish actual prejudice has one final means of obtaining habeas review. As the Court in Murray explained, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." 477 U.S. at 496. This case, however, is not an "extraordinary" case in the sense the Murray Court used the term, and, as such, Federico cannot avail herself of this "exception" to the cause-and-prejudice requirement
 
 
 [9]
 We note that Federico's counsel did object at one point to questions the prosecutor asked of Federico involving the evils of the drug trade. Although we have recently confirmed that a single isolated remark can form the basis for a successful prosecutorial misconduct claim, United States v. Carroll, 26 F.3d 1380 (6th Cir.1994), we do not feel that the line of questioning at issue here is so prejudicial that it deprived Federico of her due process rights. See Paprocki, 869 F.2d at 288 ("A prosecutor may conduct himself in a manner that 'deserves ... condemnation,' but still is not egregious enough to deprive the defendant of a fair trial.") (quoting Darden v. Wainwright, 477 U.S. 168, 179 (1986))
 
 
 [10]
 Even if we were to conclude that Federico's appellate counsel should have pursued a claim of ineffective assistance of trial counsel, we would still resolve the prejudice issue in respondent's favor. In this regard, we note that review of Federico's claim of prosecutorial misconduct was not entirely foreclosed; in fact, this claim was reviewed by the Michigan Court of Appeals (albeit under the manifest injustice standard). The state appellate court found that with regard to most of the alleged instances of misconduct, the prosecutor actually had acted entirely within his bounds. And, while the court found that the prosecutor had acted inappropriately on three separate occasions at trial, the court nevertheless held that no manifest injustice had occurred. Under these circumstances, we are unpersuaded that Federico suffered prejudice due to the performance of her appellate counsel
 
 
 [11]
 In fact, the record reveals that the trial court properly instructed the jury on the beyond-a-reasonable-doubt standard on numerous occasions
 
 
 [12]
 Specifically, Federico asserts that her due process rights have been impaired in that certain portions of the trial transcript are unavailable, the trial judge issued a deadlocked jury instruction that departed substantially from the ABA's model instruction, and there was a multiplicity of errors at trial