983 F.2d 1067
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Arthur KNUCKLES, Plaintiff-Appellant,
v.
Shirley ROGERS, Defendant-Appellee.
 No. 92-3208.
 United States Court of Appeals, Sixth Circuit.
 Jan. 21, 1993.
 
 Before RALPH B. GUY, JR. and ALAN E. NORRIS, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Appellant Arthur Knuckles ("Knuckles") appeals the district court's denial of his petition for a writ of habeas corpus. Knuckles contends that he was denied a fair trial in an Ohio county court because the prosecutor made inflammatory statements during argument to the jury, and because the trial court made a number of errors and omissions in the jury instructions. Knuckles also contends that he was denied the effective assistance of counsel. For the reasons stated below, we affirm the district court.
 
 
 2
 * On January 12, 1989, Knuckles, a resident of Lima, Ohio, rode to Bellefontaine, Ohio with an acquaintance. After Knuckles and his acquaintance arrived in Bellefontaine, they went to a residence located at 116 West Auburn Street. While the two men were in the Auburn Street residence, Bellefontaine police were conducting surveillance on the residence because they suspected the occupants were selling cocaine. The police sent a confidential informant to the residence. The informant entered the house and purchased cocaine with pre-recorded money. The police informant left the house with the cocaine, and the police then called the Special Weapons and Tactics ("SWAT") team to secure the house and the surrounding area. Another officer was sent for a search warrant, which he eventually obtained based upon the informant's information. Before the officer returned with the search warrant, however, the SWAT team entered the house and secured it with a protective sweep because the police were afraid that all of the drugs would be sold and that their pre-recorded money would be taken away.
 
 
 3
 The police found Knuckles on the second floor of the house. They searched him and found in his wallet $850 in cash, including one of the pre-recorded $50.00 bills, and one marijuana cigarette. Under the seat cushions of a couch where Knuckles had been sitting, the police found a roll of money amounting to $757. The $757 included $300 in pre-recorded bills. The police also found a bag containing 44.67 grams of cocaine in a second-story closet. Knuckles was arrested and charged with aggravated trafficking of cocaine in violation of Ohio Rev. Code Ann. § 2925.03(A)(6) (1987).[1]
 
 
 4
 On February 23, 1989, Knuckles was indicted in state court for one count of aggravated trafficking of cocaine. On May 31 and June 1, 1989, a two-day jury trial was held, and Knuckles was found guilty. Knuckles was sentenced to five to fifteen years' imprisonment with an actual term of imprisonment of three years, and was fined $5,000 plus the costs of the prosecution. Knuckles perfected an appeal to the Court of Appeals for Logan County, alleging numerous errors, including the errors argued before this court.[2] The court of appeals affirmed the conviction, and Knuckles appealed to the Ohio Supreme Court. The Ohio Supreme Court dismissed the appeal on the ground that Knuckles' case presented no substantial constitutional question.[3]
 
 
 5
 On July 2, 1991, Knuckles filed a petition for a writ of habeas corpus in federal district court for the Northern District of Ohio, making the same arguments for relief that he made before the Ohio Supreme Court. The case was referred to a magistrate judge. In his Report and Recommendation, the magistrate concluded that although certain misstatements by the prosecutor constituted constitutional error, the error was harmless beyond a reasonable doubt. He recommended that the writ be denied, but that a certificate of probable cause be issued to allow an appeal because he felt that the harmless error question was a close call. He concluded that Knuckles' other claims were meritless. Knuckles interposed timely objections to the Report and Recommendation, and the district court conducted a de novo consideration of the petition. After its de novo consideration, the district court adopted the magistrate's recommendation and denied the writ, but issued the certificate of probable cause. Knuckles then filed a timely notice of appeal to this court.
 
 II
 
 6
 Knuckles first contends that he was denied a fair trial because the prosecutor made several inflammatory and prejudicial remarks in his jury arguments. During his jury argument, the prosecutor made the following statement:
 
 
 7
 He is the man that brought this down to be sold in our county. Ladies and gentlemen of the jury, we can't allow this to happen. We can't allow our streets to become full of cocaine. That is a major, major amount of cocaine; and it was brought here to be sold. This man has got to be taken off the streets.
 
 
 8
 J.A. at 179. In the prosecutor's rebuttal argument, the prosecutor stated:
 
 
 9
 Mr. Knuckles is being charged because he brought forty ounces[4] of cocaine down to Logan County[5] to sell it.
 
 
 10
 J.A. at 180. A few minutes later, the prosecutor continued:
 
 
 11
 He came down and got into a hornet's nest, you bet you. And if anybody else comes down from Allen County and does this in Logan County, they'll be in a hornet's nest if I have anything to say about it. We've got to keep it off the streets. You've got to send a message.
 
 
 12
 J.A. at 183. Defense counsel did not object to any of these statements.
 
 
 13
 Knuckles contends that these remarks excited local prejudice against him and compromised his right to a fair trial. The effect of these remarks was exacerbated, Knuckles argues, because he is a black man and all of the jurors were white.
 
 
 14
 The appellee responds that Knuckles failed to interpose a timely objection to the alleged prosecutorial improprieties and has failed either to allege cause for his failure to object or to show actual prejudice; therefore, appellee argues, review by this court is barred.[6] Alternatively, the appellee contends that the alleged prosecutorial improprieties did not prejudice Knuckles' right to a fair trial. Moreover, appellee argues, any constitutional error is harmless error because the case against Knuckles is overwhelming.
 
 
 15
 In Wainwright v. Sykes, 433 U.S. 72 (1977), the Supreme Court held that a habeas petitioner who fails to comply with a state contemporaneous objection rule is barred from habeas relief if the procedural default is an adequate and independent state law ground, unless the petitioner shows cause for the default and actual prejudice stemming from the default.[7] However, if the state court reaches the merits of the claimed federal constitutional error and does not assert the procedural bar, then the federal courts may reach the merits of the constitutional claim, since, in such a case, there is not an adequate and independent state law ground. Rice v. Marshall, 816 F.2d 1126, 1129 (6th Cir.1987); Raper v. Mintzes, 706 F.2d 161, 163 (6th Cir.1983). We must now decide whether the decision of the Logan County Court of Appeals rests on an adequate and independent state law ground.
 
 
 16
 In the case at bar, it is clear that Ohio has a contemporaneous objection rule, and that the Ohio courts treat the failure to object to a claimed error as a procedural default. Ohio R.Crim.P. 52; State v. Williams, 304 N.E.2d 1364 (Ohio 1977). Since Knuckles failed to object contemporaneously to the allegedly improper remarks, he violated Ohio's contemporaneous objection rule and committed a procedural default. However, the procedural default did not foreclose all consideration by the Ohio appellate court; the Ohio court examined the record to determine if the allegedly improper remarks were "plain error."
 
 
 17
 The basic inquiry in the plain error analysis in Ohio is whether the defendant has been denied a "fair trial."[8] Whether a person is denied a fair trial is a question to be resolved by applying principles of federal constitutional law. Therefore, we conclude that the Ohio appellate court's decision was not independent of federal law. Walker v. Endell, 850 F.2d 470 (9th Cir.1987) (holding that review by a state court under a plain error analysis treated the claimed constitutional error on the merits and waived the procedural bar), cert. denied, 488 U.S. 926, and cert. denied, 488 U.S. 981 (1988); Rogers-Bey v. Lane, 896 F.2d 279 (7th Cir.), cert. denied, 111 S.Ct. 93 (1990).
 
 
 18
 We find further support for our holding in Harris v. Reed, 489 U.S. 255 (1989). In Harris, the Supreme Court held that a state court must explicitly hold that its decision is based upon state law in order to foreclose federal habeas review. Id. at 264. The Ohio appellate court did not clearly state that it relied on the procedural default to deny relief. Without such a clear statement, we must presume that the state court based its decision on federal law. Id. at 265-266. Accordingly, we conclude that the procedural default is not a bar to our review of Knuckles' claims because the decision of the Ohio appellate court does not rest on an independent state law ground.[9]
 
 
 19
 We now turn to the merits of Knuckles' claim. Knuckles argues that he was deprived of his right to a fair trial by the alleged prosecutorial improprieties. Before this court can grant habeas relief for allegedly improper prosecutorial statements, "the prosecutor's statements must be so egregious as to render the trial fundamentally unfair. This determination is to be made by evaluating the totality of the circumstances surrounding each individual case." Angel v. Overberg, 682 F.2d 605, 608 (6th Cir.1982) (en banc).
 
 
 20
 In the case at bar, the prosecutor clearly attempted to appeal to the local prejudices of the jury and to inflame the jurors against Knuckles. Although we do not condone the sort of statements made by the prosecutor, after considering the totality of the circumstances, we do not believe that the alleged improprieties rendered Knuckles' trial fundamentally unfair.[10] We also believe that the proof against Knuckles was so strong that he would have been convicted even if the prosecutor had not made the allegedly improper statements.
 
 
 21
 Knuckles also claims that the prosecutor made several other improper arguments. Although some of these statements may have been improper, none was so egregious that, considering the totality of the circumstances, it rendered Knuckles' trial fundamentally unfair.
 
 III
 
 22
 Knuckles next contends that he was denied the effective assistance of counsel because his lawyer did not file a motion to suppress the 44.67 grams of cocaine that were discovered at the Auburn Street residence at the time of his arrest. He argues that since the police undertook their search without a warrant, his Fourth Amendment rights were violated, and his lawyer should have moved to suppress the cocaine as the fruit of an illegal search.
 
 
 23
 The appellee responds that filing the motion to suppress the cocaine would have been futile because Knuckles had no standing to challenge the search. Even if he did have standing, appellee contends, the police conduct was legal because it was justified by exigent circumstances.
 
 
 24
 This court reviews de novo the district court's and the state court's legal conclusion that petitioner's legal counsel was effective. Smith v. Jago, 888 F.2d 399 (6th Cir.1989), cert. denied, 495 U.S. 961 (1990); Blackburn v. Foltz, 828 F.2d 1177, 1181 (6th Cir.1987), cert. denied, 485 U.S. 970 (1988). In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test to determine if counsel was effective:
 
 
 25
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 
 
 26
 Id. at 687.
 
 
 27
 If, as the appellee argues, filing a motion to suppress would have been futile, then Knuckles' claim must fail. United States v. Madewell, 917 F.2d 301, 304 (7th Cir.1991) (ineffective assistance claim must fail where motion to suppress would not have been successful).
 
 
 28
 We do not need to decide whether the search was illegal because even if it were illegal, Knuckles did not have standing to contest its legality. Before a defendant can contest an unlawful search, he must have standing; that is, he must have a reasonable expectation of privacy in the place that is the subject of the search. United States v. McNeal, 955 F.2d 1067 (6th Cir.), cert. denied, 112 S.Ct. 3039 (1992). Knuckles had no standing because he had only a tenuous connection with the house where the cocaine was seized: the record shows that he did not own the house; that he was there with friends; and that he did not plan to spend the night there. Accordingly, we conclude that Knuckles had no reasonable expectation of privacy in the house and, therefore, no standing to challenge the search. Thus, since the cocaine would not have been suppressed even if Knuckles' trial counsel had filed a motion to suppress, we conclude that the performance of Knuckles' trial counsel was not deficient and that Knuckles suffered no prejudice from his lawyer's failure to file a motion to suppress.
 
 
 29
 Knuckles next contends that his representation at trial was deficient because his lawyer asked him on direct examination about a prior conviction that would not have been admissible under the Ohio rules of evidence.[11] Knuckles also points out that the evidence of his conviction was used by the prosecutor to argue to the jury that "defense counsel's [sic] acknowledged that his client's [sic] probably a thief and he testified to that." J.A. at 182. Appellee contends that the decision to introduce the conviction was a trial tactic of defense counsel. As the Supreme Court held in Strickland, "a court must indulge a strong presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Strickland, 466 U.S. at 689. We believe that trial counsel's decision to introduce the stale conviction was not constitutionally deficient because his decision to introduce it may have been part of his trial strategy. Moreover, we do not believe that introducing this conviction denied Knuckles a fair trial. Accordingly, we conclude that Knuckle's claim of ineffective assistance of counsel is meritless.
 
 
 30
 Knuckles next argues that his trial counsel made a number of other errors at trial, but does not state what errors trial counsel committed. Our review of the record satisfies us that Knuckles' trial counsel was not constitutionally deficient.
 
 IV
 
 31
 Knuckles next argues that he was denied a fair trial because the trial court failed to instruct the jury on the weight to be given to accomplice testimony. He also contends that the trial court should have instructed the jury that his prior conviction for accessory to bank robbery was relevant only on the issue of his credibility. Knuckles also contends that the trial court erroneously instructed the jury that the jury should acquit Knuckles only if it found that the prosecution failed to prove all of the elements of the offense beyond a reasonable doubt. Knuckles further contends that the trial court failed to instruct the jury that the jury was required by an Ohio statute to determine the amount of cocaine that Knuckles possessed.
 
 
 32
 Knuckles' trial counsel made no objection to any of these alleged errors. Accordingly, the Ohio appellate court examined these alleged errors under the plain error analysis. As stated above, subjecting a claimed error to a plain error analysis is not an adequate and independent state law ground. Nevertheless, before this court can grant habeas relief on the basis of erroneous jury instructions, the petitioner must demonstrate that a federal constitutional right has been violated. Cupp v. Naughten, 414 U.S. 141, 146 (1973). We cannot review errors of law in the manner of another state appellate court. Allen v. Morris, 845 F.2d 610 (6th Cir.1988). Our review of the record convinces us that there was no constitutional error in the jury instructions.
 
 V
 
 33
 Accordingly, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 Ohio Rev. Code Ann. § 2925.03(A)(6) (1987), which is entitled "Trafficking in drugs," provides:
 (A) No person shall knowingly do any of the following:
 * * *
 (6) Possess a controlled substance in an amount equal to or exceeding three times the bulk amount.
 The bulk amount is ten grams. Ohio Rev.Code Ann. § 2925.01(E)(1) (1987).
 
 
 [2]
 State v. Knuckles, No. 8-89-16 (Ohio App. filed Dec. 21, 1990)
 
 
 [3]
 State v. Knuckles, 574 N.E.2d 1079 (Ohio 1991)
 
 
 [4]
 Even though the prosecutor said "forty ounces," Knuckles was actually charged with possession of 44.67 grams
 
 
 [5]
 Bellefontaine is located in Logan County, Ohio
 
 
 [6]
 Although the appellee apparently argued a procedural default before the Ohio appellate courts, in the appellee's Return of the Writ, the appellee did not argue that Knuckles failed to preserve his right to appeal the prosecutorial misconduct. The appellee simply argued that the prosecutors' misstatements did not render the trial fundamentally unfair
 
 
 [7]
 In extraordinary cases where a constitutional violation has resulted in a "miscarriage of justice," a federal court may hear the merits of an alleged error even if the petitioner has not satisfied the cause and prejudice rule. Sawyer v. Whitley, 112 S.Ct. 2514, 2518-19 (1992); Murray v. Carrier, 477 U.S. 478, 495-96 (1986)
 
 
 [8]
 In State v. Wade, 373 N.E.2d 1244 (Ohio 1978), vacated and remanded on other grounds, 438 U.S. 911 (1978), the Ohio Supreme Court held:
 A claim of error in a criminal case can not be predicated upon the improper remarks of counsel during his argument at trial, which were not objected to, unless such remarks serve to deny the defendant a fair trial.
 
 
 [9]
 In Paprocki v. Foltz, 869 F.2d 281, 284-85 (6th Cir.1989), we confronted a similar problem. There, the defendant failed to object in a timely manner to a claimed error in the jury instructions. Because of the procedural default, the Michigan Court of Appeals reviewed the claimed error for "manifest injustice" rather than reviewing it on a lesser standard as it would have done had defense counsel interposed a timely objection. Id. at 284. This court held that the Michigan appellate court did not waive the procedural default; instead, we held that the Michigan court had enforced the procedural bar while reserving the right to waive the default to prevent manifest injustice; accordingly, we indicated that the defendant had to show cause and prejudice. Id. at 285. As an alternative ground for our decision, however, we reviewed the merits of the petitioner's claim and denied relief. Id
 
 
 [10]
 In our recent decision in United States v. Solivan, 937 F.2d 1146 (6th Cir.1991), we reversed a conviction on direct appeal from federal district court when the prosecutor appealed to the local prejudices of the jury. Our result in the habeas action before us must be different, however, because in the habeas context we review for deprivation of constitutional rights; we do not sit as an appellate court reviewing for errors of law. See Beam v. Foltz, 832 F.2d 1401, 1408 (6th Cir.1987), cert. denied, 485 U.S. 980 (1988)
 
 
 [11]
 The conviction was a thirteen-year-old conviction for accessory before and after the fact to armed bank robbery