**Edwin Duane LEWIS, Petitioner–Appellant,**

v.

**Bruce CURTIS, Warden, Southern Michigan Correctional Facility Respondent–Appellee.**

**Nos. 01–1130, 01–1261.**

United States Court of Appeals, Sixth Circuit.

May 20, 2002.

Before MOORE, COLE, and FARRIS,[*] Circuit Judges.

## OPINION

COLE, Circuit Judge.

Petitioner–Appellant Edwin Lewis appeals the judgment of the district court, assigning error to that court's denial of his petition for writ of habeas corpus arising out of his conviction for first degree murder and felony use of a firearm. Lewis argues that he is entitled to habeas relief on three grounds: 1) he was denied the effective assistance of counsel as guaran-

[*] The Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

teed by the Sixth Amendment of the United States Constitution; 2) the trial court improperly instructed the jury as to Lewis's ability to use deadly force to defend himself, and, relatedly, his lack of duty to retreat; and 3) the prosecutor impermissibly prejudiced his trial by repeatedly asserting to the jury that Lewis lied when he took the stand. For the reasons discussed herein, the judgment of the district court is AFFIRMED.

## BACKGROUND

### A.

This appeal arises out of the conviction of Edwin Lewis for the murders of Deon Banks and Dawn Nelums. At trial, Lewis admitted that he shot and killed Banks and Nelums, but asserted that he did so in self-defense. Lewis testified that in the early hours of January 11, 1992, he went to the home of Banks and Nelums to purchase ten dollars worth of crack cocaine. Lewis testified that when he gave Banks a twenty dollar bill, Banks insisted that he purchase twenty dollars worth and refused to return his money. A fight ensued, during which Banks displayed a knife and cut Lewis's hand. Lewis stated that he and Banks struggled for the knife; Lewis then grabbed Banks's hand and forced Banks to place the knife in his own chest.

Lewis testified that Nelums then entered the room carrying two knives, attacked Lewis, and cut his leg. Lewis then caused Banks to stab himself two more times. Banks and Nelums ran out of the apartment onto the outside stairwell and down the stairs. Lewis followed them onto the stairwell; he stated that he felt it was important to keep Banks and Nelums from leaving the apartment, for fear that their street dealers would come to their assistance and kill Lewis. On the stairwell, Lewis took out a semi-automatic handgun and cocked it. Lewis stated that in the course of cocking the gun, he accidentally fired a bullet. Lewis testified that he then heard a person, later discovered to be Banks, coming towards him. Lewis testified that he shouted to Banks to stay away, and that Banks replied that he was going to kill him. Lewis stated that Banks lifted his arm; Lewis then shot Banks three times, killing him.

Lewis testified that he then ran down the stairs to the front of the building and fell onto the porch steps. He stated that while he lay on the steps, he heard someone running towards him, later discovered to be Nelums. Lewis testified that he raised his gun toward Nelums to keep her from attacking him, but he accidentally fired his gun, shooting and killing her at close range. Lewis admitted that after he shot Banks and Nelums, he fled the scene.

At trial, the prosecution painted a different scene of events. Proceeding under the theory that Lewis murdered Banks and Nelums intentionally as a result of a drug deal gone awry, the prosecution introduced the testimony of eyewitness Evander Scott. Scott testified that as he stood across the street from Banks's and Nelums's apartment, he saw a woman run from the outside steps of the upstairs apartment, screaming. He testified that the woman ran to the front porch of the building and banged on the front door, screaming for help. Scott stated that he then saw a man run down the same set of stairs and onto the same porch. Scott testified that moments later he heard a gunshot. The prosecution argued that Scott's testimony was inconsistent with Lewis's testimony that he accidentally shot Nelums in self-defense.

The prosecution also introduced the testimony of the coroner. The coroner concluded that Banks had been shot behind the ear and stabbed five times: twice in

the head and three times in the chest. The coroner also found that Nelums had four stab wounds at the top of her head and two bullet wounds: one in her head, near her right ear, and one through her right hand. The coroner testified that the placement of Nelums's gun shot wounds suggested that a single bullet had entered her hand and her head, and that she had lifted her hand in anticipation of being shot. The prosecution argued that the similarity and severity of the victims' wounds indicated that they were deliberately inflicted by Lewis.

Finally, the prosecution also cast doubt on Lewis's testimony by introducing physical evidence from the crime scene. In particular, the prosecution pointed out that no crack cocaine was recovered from Banks's and Nelums's apartment or on their persons. Instead, police recovered only a small amount of powder cocaine from the apartment. This fact, argued the prosecution, undermined Lewis's assertion that Banks and Nelums were prolific crack dealers. The prosecution also introduced evidence of emptied gun cartridges that were recovered both from the outside stairwell and on the front porch. The prosecution's firearms expert testified that the presence of empty cartridges indicated that Lewis had misfired several times and had "racked back" his gun in order to shoot again.

After considering all of the evidence presented at trial, the jury convicted Lewis for the first-degree murders of Banks and Nelums and for felony use of a firearm. Lewis was sentenced to two concurrent life sentences for the murder charges and two consecutive two-year sentences for felony use of a firearm.

## B.

Lewis appealed the jury's verdict and sentence to the Michigan Court of Appeals, assigning seven points of error: (1) the trial court erred by failing to *sua sponte* instruct the jury correctly as to the elements of self-defense; (2) the trial court erred in instructing the jury that Lewis had a duty to retreat from the crime scene; (3) Lewis was denied the effective assistance of counsel when his attorney failed to object to the jury instructions; (4) the prosecution inappropriately distorted the definition of premeditation; (5) the trial court gave incomplete written jury instructions; (6) the prosecution inappropriately stated that Lewis was lying in his testimony; and (7) defense counsel was ineffective in failing to introduce critical evidence on Lewis's behalf. The Michigan Court of Appeals affirmed Lewis's conviction. The Michigan Supreme Court denied leave to appeal.

On May 6, 1998, Lewis filed a petition for writ of habeas corpus in the District Court for the Eastern District of Michigan. Lewis raised the same seven points of error that he raised in the Michigan Court of Appeals. After consideration of his petition, the district court denied the writ of habeas corpus and, in accord with the mandate of *Slack v. McDaniel,* 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000), granted a certificate of appealability (COA) on three issues: (1) the effectiveness of Lewis's defense counsel; (2) the propriety of the trial court's jury instructions as to deadly force and the duty to retreat; and (3) the propriety of the prosecution's repeated comments about Lewis's truthfulness. This appeal followed.

## STANDARD OF REVIEW

In an appeal of a district court's decision denying habeas relief under 28 U.S.C. § 2254, this Court's review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–32, 110 Stat. 1214 (1996). Under

AEDPA, habeas relief may not be granted with respect to any claim adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). This Court must presume that all determinations of factual issues made by the state court are correct unless the petitioner can rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

In *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court determined that a state court's decision is contrary to clearly established federal law where that court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* at 412–3, 120 S.Ct. 1495. The *Williams* Court further held that a state court unreasonably applies clearly established Supreme Court precedent when it correctly identifies the governing legal principle in the case, yet unreasonably applies that principle to the facts of the defendant's case. *See id.* at 413, 120 S.Ct. 1495. We will examine Lewis's claims according to these parameters.

### DISCUSSION

#### Ineffective Assistance of Counsel Claim

Lewis asserts that he is entitled to habeas relief because he was denied the effective assistance of counsel, as required by the Sixth Amendment. At trial, Lewis was represented by E. Brady Denton. Lewis argues that Denton's performance at trial was not effective because (1) Denton conferred with Lewis only once prior to trial; (2) Denton did not hire a criminal investigator; (3) Denton did not call any character witnesses to testify on Lewis's behalf, even though Lewis's account of the events was central to his defense; (4) Denton did not call any impeachment witnesses and did not call a witness to rebut the testimony of the coroner; and (5) Denton did not challenge the content of the jury instructions or the propriety of the prosecution's repeated assertions that Lewis was lying. We agree with the district court that this claim is without merit.

The Sixth Amendment of the Constitution provides criminal defendants with "the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend VI. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court held that a defendant is considered to have been deprived of the right to counsel where he can demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment [and that] the deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. 2052.

As to the performance prong of *Strickland*, a defendant must demonstrate that his lawyer's performance fell below an objective standard of lawyering. An attorney's actions are to be examined just as they were executed, without the benefit of hindsight. *See Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir.2000) ("With regard to the performance prong of the inquiry, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of performance is highly deferential, and [a]

fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight.") (quoting *Strickland,* 406 U.S. at 689, 92 S.Ct. 1877). Where counsel proceeds according to an objectively reasonable strategy, his performance is generally deemed effective. *See Miller v. Francis,* 269 F.3d 609, 615–16 (6th Cir.2001). As to the prejudice prong, the *Strickland* Court elaborated that, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. The *Strickland* Court defined 'a reasonable probability' as "a probability sufficient to undermine confidence in the outcome." *Id.*

■ Given these parameters for review, Lewis was not ultimately denied the effective assistance of counsel. First, as to the performance prong of *Strickland,* Denton explained in the habeas hearing before the district court that his strategy at trial was to advance the theory that Lewis acted in self-defense. Because there were no other witnesses present at the scene of the crime to testify to Lewis's version of events, Denton testified that he considered Lewis to be his own best witness. Denton testified that he found Lewis's version of the events to be credible. Given the multitude of physical evidence suggesting that Lewis caused the deaths of Banks and Nelums, Denton's strategy to concede as much, yet assert that Lewis acted in self-defense, appears to be a reasonable trial strategy. The Michigan Court of Appeals thus reasonably concluded that Denton's performance was not substandard under *Strickland.*

Furthermore, even if Denton's performance was substandard, Lewis cannot establish that Denton's performance was deficient so as to have altered the outcome of his trial. Notwithstanding Denton's acts and omissions at trial, the prosecution would have nonetheless legitimately introduced to the jury the eyewitness testimony of Scott. The prosecution would have also still introduced the seemingly incontrovertible evidence that Banks's and Nelums's bullet wounds were nearly identical, casting doubt that they both were accidentally inflicted. Denton's actions and inactions also had no effect upon the testimony of the firearms expert as well as the evidence reflecting the conspicuous absence of crack cocaine in the apartment. Given the pervasive evidence that demonstrates that Lewis did not act in self-defense, it is unlikely that Denton's acts and omissions would have caused one to lose confidence in the jury's verdict. Therefore, the Michigan Court of Appeals did not err in finding that Lewis was not denied the effective assistance of counsel.

### Deficient Jury Instructions Claim

Lewis asserts that the trial court erred in instructing the jury regarding Lewis's ability to use deadly force and, relatedly, any duty to retreat. In doing so, alleges Lewis, the trial court denied him of his due process rights under the Fourteenth Amendment. We disagree.

Lewis did not object to the trial court's jury instructions, nor did he suggest alternative instructions for the jury. Michigan law provides that where a defendant fails to object contemporaneously to an error in jury instructions, a claim based upon jury instructions is considered to have been procedurally defaulted. *See People v. Grant,* 445 Mich. 535, 520 N.W.2d 123, 128 (1994) ("As a general rule, issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances.") Michigan law provides that where a defendant fails to object to an alleged error in jury instructions, a defendant is only eligible for relief in the Michigan courts where

the alleged error has caused a "manifest injustice" in the trial court. *See People v. Henry,* 239 Mich.App. 140, 607 N.W.2d 767, 772 (1999) ("Because defendant failed to object to the jury instructions at trial, he has waived any error unless relief is necessary to avoid manifest injustice."). However, even where a Michigan appellate court conducts "manifest injustice" review of a claim, that claim is still considered to be procedurally defaulted. *See Paprocki v. Foltz,* 869 F.2d 281, 284 (6th Cir.1989) ("The Michigan Court of Appeals did not conduct the sort of review of the jury instructions that presumably would have been undertaken had there been a timely objection to them; instead, the court inquired only whether affirmance of the conviction would 'result in manifest injustice' because of the alleged instructional error.").

A procedurally defaulted state claim can only be reviewed by a federal court where the defendant can demonstrate cause for the procedural default and actual prejudice as a result of the error at trial, or alternatively, a fundamental miscarriage of justice. *See Coleman v. Thompson,* 501 U.S. 722, 749, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In order to show cause, the defendant must demonstrate an objective reason for his failure to raise the claim before the state courts. *See Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). A defendant may only assert the ineffectiveness of counsel as cause for his failure to comply with a state procedural rule where his counsel's performance satisfies the ineffective assistance standard under *Strickland. See id.* at 488, 106 S.Ct. 2639 ("[T]he question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington* we discern no inequity

in requiring him to bear the risk of attorney error that results in a procedural default."). Where a defendant can demonstrate cause, he must further demonstrate that he was prejudiced at trial by the claimed constitutional error. *See Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. In order to establish prejudice, a petitioner must demonstrate that he was actually prejudiced by the error, that is, he "must show not merely that the errors at trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Carrier,* 477 U.S. at 494, 106 S.Ct. 2639 (emphasis in original) (quoting *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

Because Lewis did not object to the jury instructions at trial as required by Michigan law, his jury instruction claim is procedurally defaulted. Therefore, we must examine the extent to which Lewis is able to demonstrate cause and prejudice for his failure to present this claim.

■ Lewis argues that he was unable to comply with Michigan's rule requiring a timely objection to jury instructions because of his counsel's failure to do so at trial. However, Denton's failure to object to the jury instructions does not by itself establish cause. *See Carrier,* 477 U.S. at 486, 106 S.Ct. 2639 ("[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default."). Lewis can only show cause through his counsel's errors at trial where Denton's performance satisfies the performance/prejudice prongs of *Strickland. Id.* at 488, 106 S.Ct. 2639. As discussed above, because Denton's failure to object to the jury instructions, along with the other errors that Denton committed at trial, does not rise to the level of a Sixth

Amendment violation under *Strickland,* Lewis is unable to demonstrate cause for his failure to comply with Michigan's rule for challenging jury instructions. This claim is thus procedurally defaulted.

### Prosecutorial Misconduct Claim

Lewis also brings a claim for prosecutorial misconduct, alleging that the prosecution (1) unconstitutionally vouched for Lewis's credibility by continually asserting that Lewis lied during his testimony; and (2) deliberately misstated the definition of "premeditation" in the context of first-degree murder. We find this claim to be without merit.

The Supreme Court has held that misconduct on the part of the prosecution violates a defendant's due process rights where the misconduct "so infec[ts] the trial with unfairness as to make the resulting conviction a denial of due process." *Greer v. Miller,* 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). A prosecutor's actions are said to infect a trial with unfairness where, when viewed in the context of all of the evidence presented at trial, they "undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." *United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

In particular, a prosecutor possesses a heightened duty to refrain from "vouching," or personally attesting to the credibility of witnesses or expressing personal views regarding the guilt of the defendant. "[S]uch comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the im-

primatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *Id.* at 18–19, 105 S.Ct. 1038. The *Young* Court considered two factors to be relevant in determining whether or not a prosecutor's comments that vouch for the defendant's veracity have compromised the jury's deliberations. First, the Court considered whether, when viewed in context of all of the evidence presented at trial, the prosecutor's comments implied that the prosecutor had access to evidence outside of the record that supported a finding of guilt. Second, the *Young* Court examined the record to determine the likelihood that the jury's deliberations were in fact prejudiced by the statements. *Id.* at 19, 105 S.Ct. 1038.

During closing argument, the prosecution did allude to the truthfulness of Lewis's testimony on several occasions. In particular, the prosecution stated: (1) "Let's look at what he said to you after he took the stand and swore to tell you the truth. That doesn't mean that he's telling the truth;" (2) "How did he know there wasn't a back door? Because he lied to you again;" (3) "Bottom line, he's lying to you;" (4) "There was no evidence whatsoever, outside the lies of Edwin Lewis;" (4) "Two lucky shots or just a liar from the witness stand;" and (5) "Defendant lied to you throughout his testimony."

█ In light of *Young,* the prosecution's comments, while not desirable, do not imply that the prosecution knew of evidence outside of the record that Lewis was being untruthful. In fact, the prosecutor made comments about Lewis's veracity in order to show disparities between Lewis's testimony and the other evidence introduced at trial. Given that Lewis's defense was comprised almost entirely of his testimony, it is logical that the prosecution would wish to cast doubt on the truthfulness of that testimony in light of other evidence. Be-

cause these comments draw conclusions from evidence that had previously been presented at trial, the Michigan Court of Appeals did not act unreasonably in concluding that the prosecution did not vouch for Lewis's credibility.

Furthermore, the Michigan Court of Appeals did not unreasonably apply Supreme Court precedent by concluding that the prosecution's comments did not prejudice the jury's deliberations. As stated above, there existed a substantial amount of evidence at trial that indicated that Lewis's actions were not made in self-defense. In particular, Scott's testimony, as well as the physical evidence introduced at trial, seriously cast doubt on Lewis's testimony that he acted in self-defense. Therefore, even if the prosecution had not alluded to the contradictions between Lewis's testimony and other evidence at trial, there still existed convincing evidence of guilt. As such, the Michigan Court of Appeals did not unreasonably apply federal law in finding that the prosecution's actions were constitutionally sound.

■ Lewis also challenges the prosecution's definition of "premeditation." In particular, at one point during trial, the prosecution stated that, "to premeditate or think about, you understand could be done in a brief moment." This definition encouraged jurors, argues Lewis, that premeditation could occur in an instant. However, the trial court included a more thorough definition of premeditation and deliberation in its jury instructions. The trial court instructed the jury that:

> the intent to kill must be "premeditated, that is thought out beforehand ... [and that] the killing was deliberate, which means that the defendant considered the pros and cons of the killing and thought about and chose his actions before he did it. There must have been real and substantial reflection for long enough to give a reasonable person a chance to think twice about the intent to kill. The killing cannot be the result of a sudden impulse, without thought or reflection.

We find that the trial court cured any conceivable confusion that could have been caused by the prosecution's definitions. As such, it cannot be said that the statements of the prosecutor so infected Lewis's trial with unfairness so "as to make the resulting conviction a denial of due process." *Greer*, 483 U.S. at 765, 107 S.Ct. 3102 (quoting *Donnelly*, 416 U.S. at 643, 94 S.Ct. 1868). Thus, the Michigan Court of Appeals did not contradict or unreasonably apply clearly established law in concluding that Lewis was not entitled to relief based on this claim.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.