COOK, Circuit Judge.
Brent Smith, convicted in Michigan on three counts of criminal sexual conduct, seeks a writ of habeas corpus under 28 U.S.C. § 2254. The district court granted Smith’s petition and we reverse and remand.
I. Background
The Michigan Court of Appeals set forth the pertinent facts:
Defendant was a police officer with the City of Berkley from June 1997 until approximately 2001. The instant charges arose from events in the early morning hours of December 23, 2000, when defendant, who worked the midnight shift, was on duty and patrolling. The complainant, 19 year-old Shannon Sargent, testified that at around 1:30 a.m. that morning, defendant approached the vehicle in which she and her boyfriend were “making out,” which was parked behind a bar in Berkley. Sargent showed defendant a driver’s license that was not her own, belonging to a woman who was of legal drinking age. Sargent testified that defendant asked her to step out of the car and get in the police car, asked if he could search her and did so, and later asked if he could do a second search while she was seated in the back seat of the patrol car, during which he felt her breast, inner thighs, vaginal area, and buttocks, while his hand was underneath her clothes. She testified she was crying and hysterical. Her boyfriend at the time, Peter Mari-nelli, corroborated that testimony, and said she had told him that defendant had put his finger inside her. Defendant drove Marinelli and Sargent to the local Denny’s and dropped them off. The manager of Denny’s testified that he saw Marinelli and Sargent and that Sargent was crying and upset. Sargent’s mother and Sargent testified to the adverse effects and mental anguish the incident caused Sargent, including her seeking therapy, her subsequent inability to drive more than short distances and her fear of police officers.
People v. Smith, No. 238005, 2003 WL 22301047, at *1, 2003 Mich.App. LEXIS 2524, at *1-2 (Ct.App. Oct. 7, 2003).
At trial, the Michigan court allowed the prosecution to present similar-acts evidence through the statements of witnesses Kristen Oliver and Corrine Steinbrenner, both of whom testified that Smith inappropriately touched intimate areas of their bodies during searches following traffic stops in 1998. Although Sargent expressed uncertainty at trial as to whether digital penetration occurred, the court admitted her statement to Marinelli that Smith “put his finger inside her” as an excited utterance. The jury convicted Smith of three counts of second-degree criminal sexual conduct under Michigan law, and the Michigan Court of Appeals affirmed. The Michigan Supreme Court denied Smith leave to appeal, and in July 2005, Smith filed this habeas petition.[1]
*326 II. Standard of Review
We review the district court’s decision to grant Smith’s habeas petition de novo. Ege v. Yukins, 485 F.3d 364, 371 (6th Cir.2007). Clear-error review governs our review of the district court’s factual findings; de-novo review applies where the findings arose from state-court documents. Id.
Under the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), a federal court shall not grant a writ of habeas corpus:
[W]ith respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim — (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d). But this circuit holds that “[wjhere ... the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply. Instead, this court reviews questions of law ... de novo.” Maples v. Stegall, 340 F.3d 433, 436 (6th Cir.2003) (citations omitted); see also Smith v. Ohio Dep’t of Rehab. & Corr., 463 F.3d 426, 430 (6th Cir.2006).
III. Analysis
In granting the petition, the district court agreed with Smith’s arguments on two claims: prosecutorial misconduct and ineffective assistance of counsel. We analyze each in turn.
A. Prosecutorial-Misconduct Claim and Procedural Default
The warden argues that because Smith did not object to the prosecutor’s conduct at trial, procedural default applies and the district court erred in reaching the merits of Smith’s prosecutorial-misconduct claim. We agree.
Procedural default precludes a federal court from granting a writ of habeas corpus if: (1) “there is a state procedural rule that is applicable to the petitioner’s claim and ... the petitioner failed to comply with the rule,” (2) the state court “actually enforced the state procedural sanction,” and (3) “the state procedural forfeiture is an ‘adequate and independent’ state ground on which the state can rely to foreclose review of a federal constitutional claim.” Scott v. Mitchell, 209 F.3d 854, 863-64 (6th Cir.2000) (quoting Maupin v. Smith, 785 F.2d 135, 138 (6th Cir.1986)). Only the second prong of the Maupin test is at issue here: whether the Michigan Court of Appeals enforced the procedural sanction.
The district court concluded that the state appeals court failed to enforce the procedural sanction by addressing Smith’s claim on the merits. We read the appellate court’s opinion differently. The state appellate court expressly concluded that Smith did not preserve his prosecuto-rial-misconduct claim and reviewed the defaulted claim for plain error, discussing plain-error factors, including petitioner’s “substantial rights” and “miscarriage of justice.” See Lundgren v. Mitchell, 440 F.3d 754, 765 (6th Cir.2006) (“Plain error analysis is more properly viewed as a court’s right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits.”); Paprocki v. Foltz, 869 F.2d 281, 284-85 *327 (6th Cir.1989); People v. Rodriguez, 251 Mieh.App. 10, 650 N.W.2d 96, 110 (2002). Procedural default thus bars Smith’s claim.
Smith may hurdle this procedural bar, however, by demonstrating “cause for the procedural default and actual prejudice as a result of the alleged violation of federal law, or demonstrating that failure to consider the claims will result in a fundamental miscarriage of justice.” Girts v. Yanai, 501 F.3d 743, 755 (6th Cir.2007) (internal quotation marks and editorial marks omitted). Focusing his efforts on showing cause for the default, Smith asserts that ineffective assistance of counsel qualifies as “cause” in his case. See Washington v. Hofbauer, 228 F.3d 689, 698 (6th Cir.2000) (“[Ijneffective assistance of counsel can provide the necessary ‘cause’ for the procedural default”). A party must prove that (1) “counsel’s performance was deficient,” and (2) “the deficient performance prejudiced the defense.” Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The second prong “requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.” Id. Our strong presumption is that counsel “rendered adequate assistance.” Id. at 690, 104 S.Ct. 2052.
Smith argues that his counsel failed to object to statements representing unconstitutional prosecutorial misconduct. In order to show prejudice under Strickland, he must “establish that but for the alleged error of his trial counsel in not objecting ... assuming that the prosecutor committed misconduct ... there is a reasonable probability that the result of the proceeding would have been different.” Hinkle, 271 F.3d at 245. We conclude that he cannot make that showing.
The challenged statements fall into five categories. First, Smith targets the similar-acts evidence that the prosecutor purportedly used to show Smith’s propensity to commit the alleged criminal sexual act. The prosecutor stated that “[Smith had] done it before — He started off with Kristen [Oliver],” and argued that, “after [complaints from] three girls,” the police department probably wished they had done “something more.” But the judge’s instructions about this similar-acts evidence prevented it from affecting Smith’s substantial rights:
You may only think about it [sic] whether this evidence tends to show the following ... the defendant used a plan, system, or characteristic scheme that he has used before or since. You must not consider this evidence for any other purpose. For example, you must not decide that it shows that the defendant is a bad person or that he’s likely to commit crimes.
See Roe v. Baker, 316 F.3d 557, 566 (6th Cir.2002) (concluding, on plain-error review, that “appropriate instructions ... cured any misperception that the jury might have received from the prosecutor’s arguments.”). Moreover, the prosecutor prefaced her “done it before” comment by reminding the jury of the judge’s instruction. See Byrd v. Collins, 209 F.3d 486, 537 (6th Cir.2000) (concluding that improper remarks “did not mislead the jury at all” where “the prosecutor told the jury during his closing argument that his argument was not evidence.”).
Second, Smith alleges that the prosecutor personally attacked defense counsel by accusing him of making Sargent cry. That alleged attack, however, bears no relation to Smith’s guilt or innocence, and Smith offers no argument why, had his counsel objected, “the result of the proceeding would have been different.” Hinkle, 271 F.3d at 245. Our independent review of the record convinces us that no reasonable *328 likelihood exists that an objection would have changed the outcome of the proceedings.
Third, Smith presses that the prosecutor improperly injected her own opinion into the proceedings. But read in context, see United States v. Young, 470 U.S. 1, 11, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (“[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor’s comments standing alone, for the statements or conduct must be viewed in context ....”), the comments Smith targets came in response to defense counsel’s closing arguments, see United States v. Collins, 78 F.3d 1021, 1040 (6th Cir.1996) (finding prejudicial effect minimized where defense counsel’s argument invited the improper statements of prosecutor’s personal opinion); see also Byrd, 209 F.3d at 535 (“Case law permits comments that are made in response to the argument and strategy of defense counsel.” (internal quotation marks omitted)). When the prosecutor opined that “we would believe” Sargent if Sargent testified that penetration occurred, she did so only in response to defense counsel’s insinuation that Sargent’s alleged memory loss undermined her credibility. Similarly, the prosecutor’s declaration that she was not “going after a person who’s not guilty” countered defense counsel’s closing remark that given the option, he would ask the jury to find Smith factually innocent rather than merely not guilty. Viewed in the context of the prosecutor’s entire closing argument, the “going after” statement came as an attempt to distinguish the State’s case from a witch hunt. In fact, the prosecutor immediately followed the statement with a reminder that substantial evidence supported the State’s case (“This is about the People of the State of Michigan versus the defendant. That’s it. There was a thorough investigation.... ”). Prosecutorial vouching rarely warrants a new trial. Compare Byrd, 209 F.3d at 537 (noting that the court has never granted habeas relief on the basis of improper vouching), with Bates v. Bell, 402 F.3d 635, 646 (6th Cir.2005) (finding improper injections of prosecutor’s personal beliefs, among other instances of misconduct, grounds for habeas relief).
Fourth, Smith contends that the prosecutor argued evidence not of record by asking “How about it’s common in sexual assault victims to repress the most significant thing that happened here, the worst thing?” Once again, this comment responded to defense counsel’s attack on Sargent’s credibility, when he argued that her claim to have forgotten whether penetration occurred “is going to be one for the psychological books.” Plus, because this came only as a possible explanation for Sargent’s memory loss, the jury would be unlikely to view it as factual rather than speculative. See Byrd, 209 F.3d at 536 (finding that where the prosecutor’s comments seem speculative, jurors “would not be confused into believing that these comments were factual evidence.”).
Finally, Smith points to the prosecutor’s declaration in rebuttal that returning a not-guilty verdict would be akin to saying “I’d be okay with having my daughter stopped by [Smith] at three in the morning.” Although this comment appealed to jurors’ emotions, we find it less likely to prejudice or mislead the jury than those statements in the cases cited by the district court. See Bates, 402 F.3d at 642 (“If you ... choose not to execute the defendant, you have passively issued a warrant of execution for someone else.”); Gall v. Parker, 231 F.3d 265, 315 (6th Cir.2000) (“Now folks are we going to turn [defendant] loose on society by reason of insanity^]”).
*329 Moreover, all of the alleged misconduct occurred during the prosecutor’s closing and rebuttal statements. See Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir.1997) (“In order to constitute the denial of a fair trial, prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial.” (internal quotation marks omitted)). And the judge followed closing arguments with the appropriate limiting instruction:
The lawyers’ statements and arguments are not evidence. They’re only meant to help you understand the evidence and each side’s legal theories.... You should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge.
See Wilson v. McMacken, 786 F.2d 216, 219 (6th Cir.1986) (concluding that defendant could not establish prejudice under Strickland where trial judge provided jury with limiting instruction before and after prosecutor’s closing argument containing contested statements); see also United States v. Carter, 236 F.3d 777, 787 (6th Cir.2001) (“Ordinarily, a court should not overturn a criminal conviction on the basis of a prosecutor’s comments alone, especially where the district court has given the jury an instruction that may cure the error.”); Byrd, 209 F.3d at 537 (concluding, in a habeas case, that limiting instruction was one reason alleged misconduct did not mislead jury). Given that “juries are presumed to understand and follow directions from the court,” Carter, 236 F.3d at 787, we conclude that the prosecutor’s statements did not “confuse or improperly influence” the jury, see Byrd, 209 F.3d at 538.
Because Smith cannot establish “that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different,” Strickland, 466 U.S. at 694, 104 S.Ct. 2052, he cannot show ineffective assistance of counsel as “cause” to excuse procedural default of his prosecutorial-mis-conduct claim, see Hinkle, 271 F.3d at 246. The district court erred in concluding otherwise.
B. Ineffective Assistance of Counsel
Although in our cause-and-prejudice analysis we concluded that the defense’s failure to object to the prosecutor’s statements did not constitute ineffective assistance of counsel, Smith’s petition suggests that two other deficiencies in his counsel’s performance rendered his trial outcome unreliable. As discussed earlier, to prevail on this claim, Smith must show “a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052. And, as before, we start with a strong presumption that defense counsel furnished reasonable assistance. Id. at 689, 104 S.Ct. 2052. As for our review, even though the Michigan Court of Appeals reviewed Smith’s ineffective-assistance-of-counsel claim on the merits, it is unclear whether the court properly applied Strickland. But we need not decide whether AEDPA governs, because Smith’s claim fails even under de novo review. See Baze v. Parker, 371 F.3d 310, 320 (6th Cir.2004).
First, relying on Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), Smith alleges that the prosecutor improperly used his silence to impeach his testimony at trial without objection from defense counsel, see id. at 618, 96 S.Ct. 2240 (“[I]t would be fundamentally unfair and a deprivation of due process to allow the arrested person’s silence to be used to impeach an explanation subsequently offered at trial.”). We reject this argument, concluding that Smith mischaracterizes the *330 prosecutor’s conduct. At trial, Smith testified that he had no opportunity to tell his side of the story. On cross-examination, the prosecutor referenced that testimony and showed that an opportunity had existed with two questions to Smith: whether Smith knew of Detective Miller’s involvement in the case and whether Smith had contacted Miller to explain what happened with Sargent. To assess whether these questions constitute Doyle error, we ask whether the prosecutor referred to the defendant’s post-arrest silence so that the jury would draw “inferences of guilt from [the] defendant’s decision to remain silent after ... arrest.” See Gravley v. Mills, 87 F.3d 779, 788 (6th Cir.1996). In this case, the prosecutor referenced Smith’s silence to cast doubt on Smith’s earlier claim that he never received an opportunity to explain himself, not to exploit Smith’s silence as probative of guilt. See id.; United States v. Martinez-Larraga, 517 F.3d 258, 268 (5th Cir.2008) (“Doyle also expressly recognizes that a prosecutor’s reference to [post-arrest silence] may properly be made where it is not used to impeach the defendant’s exculpatory story, or as substantive evidence of guilt, but rather to respond to some contention of the defendant concerning his post-arrest behavior.” (internal quotation marks omitted)). Because Smith fails to establish that the prosecution committed Doyle error, he cannot show “a reasonable probability” that but for his counsel’s lack of objection, “the result of the proceeding would have been different.”
Second, Smith argues that defense counsel should have objected to the admission of several witnesses’ testimony describing Sargent’s out-of-court statements about Smith. Relying on Tome v. United States, 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995), the district court agreed, concluding that “it is error to admit corroborating hearsay in order to buttress the credibility of a complainant.” Both Sargent and Marinelli testified that after Smith dropped them off at Denny’s, Sargent told Marinelli that Smith’s search included digital penetration. Sargent’s mother testified that upon arriving home, Sargent said that Smith searched her beneath her clothes. Defense counsel objected to Marinelli’s statement, but withdrew his objection once the trial court decided to admit the statement as an excited utterance, and accordingly did not object to either of the other statements.
The Michigan Court of Appeals concluded that it was within the trial court’s discretion to admit all three statements, and that, even if Sargent’s statement to her mother were not an excited utterance, it was cumulative of Sargent’s own testimony and any error was harmless. Smith disputes the state’s court’s determination, but on habeas review, we do not “decide whether a state trial judge’s decision whether to admit evidence pursuant to state evidentiary rules was a proper one. Our sole task is to decide whether federal constitutional violations have occurred.” Byrd, 209 F.3d at 528. Smith cannot establish that his counsel’s failure to object prejudiced his defense; therefore, his ineffective-assistance-of-counsel claim must fail.
IV. Conclusion
Because we conclude that Smith cannot show cause and prejudice to excuse procedural default of his prosecutorial-miscon-duct claim, and because Smith’s ineffective assistance-of-eounsel claim is without merit, we REVERSE the judgment of the district court granting the writ of habeas corpus, and REMAND for consideration of Smith’s remaining claims.

. It is unclear from the record whether Smith exhausted his post-conviction remedies, but "[w]e need not delve into the morass of procedural bar ... because Petitioner's claim fails on the merits even assuming he properly exhausted available state court remedies.” *326 Cyars v. Hofbauer, 383 F.3d 485, 486 n. 1 (6th Cir.2004).