Filed 9/24/13  P. v. Saydyk CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C069896 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 10F2417, 11F1359) |
| v. | |
| JACOB MATTHEW SAYDYK, | |
| Defendant and Appellant. | |

Defendant Jacob Matthew Saydyk appeals his conviction for possession of methamphetamine, claiming the prosecutor committed misconduct by (1) referencing defendant's postarrest silence in cross-examination and closing arguments, and (2) eliciting evidence of defendant's admissions of being a methamphetamine addict in violation of *Miranda*.[1]  We find the claimed errors forfeited for failure to object specifically on the grounds of prosecutorial misconduct and to request the trial court

---

[1]  *Miranda v. Arizona* (1996) 384 U.S. 436 [16 L.Ed.2d 694] (*Miranda*).

1

admonish the jury. Moreover, even of the claims that were not forfeited, we find no prosecutorial misconduct. Accordingly, we affirm the judgment.

## BACKGROUND

Early in the morning of March 3, 2010, Shasta County Sheriff's Department Deputies Mike Tumelson and Jon Ruiz responded to a complaint about loud music at a residence. At the scene, the deputies approached defendant and Ariel Lovell, who were standing in the parking lot near the residence. The deputies ran a check for wants, warrants, or holds on defendant and confirmed a warrant had been issued for his arrest. Tumelson handcuffed and searched defendant incident to the arrest. In the right-hand coin pocket of defendant's pants, Tumelson found a bag containing a usable amount of methamphetamine. When Tumelson pulled the methamphetamine out of the pocket, defendant spontaneously said the methamphetamine was not his and he had borrowed the pants. Defendant did not identify who had lent him the pants, and absent any other indication the pants did not belong to defendant, Tumelson did not investigate defendant's claim further.

Defendant testified he had been laying sod all day, and when he got off work he borrowed his friend Branson Lovell's pants so he could wear clean clothes to visit another friend. He did not know Branson used methamphetamine and did not know there was methamphetamine in the pants pocket. He did not tell Tumelson he had borrowed the pants before the search but told him after Tumelson found the methamphetamine. He did not tell Tumelson to whom the pants belonged because he did not feel there was any need. Defendant testified he had never used methamphetamine and prior to his arrest had only seen it on television shows. Defendant admitted that in November 2010 he had been involved in a vehicle accident while he was under the influence of alcohol. Tumelson investigated that accident. Defendant acknowledged he initially lied to Tumelson and

2

claimed he was not the driver but later admitted he was the driver.[2] Defendant admitted he had an alcohol problem.

Tumelson testified in rebuttal that he had other exchanges with defendant during which they had spoken about defendant's methamphetamine use. In January 2011 Tumelson was dispatched to defendant's mother's home on a disturbance call related to defendant's behavior at the home. Tumelson spoke with defendant regarding his argumentative and confrontational behavior, and defendant admitted he had a methamphetamine addiction. Tumelson also spoke with defendant about community drug treatment programs. Defendant exhibited symptoms of being under the influence, but Tumelson did not investigate further. He was able to get defendant to leave his mother's home and stop the disturbance. Defendant was not in custody at the time of the conversation. Tumelson and defendant also had a conversation in February 2011 when Tumelson responded to a report of a possible burglary in progress. Another officer had detained defendant in the back of a patrol car and Tumelson asked if defendant had sought treatment for his addiction.

Defendant was charged with possession of methamphetamine. (Health & Saf. Code, § 11377, subd. (a).) The complaint further alleged he had a prior serious felony conviction. (Pen. Code, § 1170.12.) Following trial, a jury found defendant guilty of possession of methamphetamine, and in bifurcated proceedings, the court found the prior strike allegation true. Separately, a plea agreement was reached in case No. 11F1359. As part of that plea, the parties agreed to a term of nine years in state prison on case No. 11F1359 and one year four months on case No. 10F2417 (one-third the midterm, doubled pursuant to the strike).

---

[2] The November 30, 2010, accident was the subject of a separate criminal case, case No. 11F1359. The substantive facts underlying that case are not relevant to any issue on appeal and are not recounted here.

DISCUSSION

## I

Defendant contends his conviction must be reversed because prosecutorial misconduct, which violated "the spirit and the letter of *Doyle v. Ohio* (1976) 426 U.S. 610," deprived him of due process. He complains the prosecutor committed misconduct by repeatedly attempting to elicit evidence of defendant's postarrest silence during cross-examination of defendant and rebuttal examination of Tumelson, and emphasizing that postarrest silence in closing argument. He claims the prosecutor committed misconduct by violating a court order to limit the examination of Tumelson on defendant's failure to identify the owner of the pants to what defendant said and did at the scene of the arrest. Defendant also argues the prosecutor committed further misconduct by "revisiting the issue of [defendant's] post-arrest silence" in closing argument. Defendant argues these references penalized him for invoking his constitutional right to remain silent. We will conclude defendant forfeited any objection he might have had to the claimed prosecutorial misconduct, and in any event, there was no misconduct.

**Forfeiture of Misconduct Claims by Failure to Object**

"It is misconduct for a prosecutor to violate a court ruling by eliciting or attempting to elicit inadmissible evidence in violation of a court order. [Citation.] It is also misconduct for a prosecutor to make remarks in opening statements or closing arguments that refer to evidence determined to be inadmissible in a previous ruling of the trial court." (*People v. Crew* (2003) 31 Cal.4th 822, 839 (*Crew*).) To show prejudicial prosecutorial misconduct, a defendant must show (1) as a matter of federal constitutional law, the prosecutor's behavior comprised a pattern of conduct so egregious that it violated due process, i.e., it rendered the trial fundamentally unfair (*People v. Bennett* (2009) 45 Cal.4th 577, 594-595), or (2) as a matter of state law, the prosecutor engaged in deceptive or reprehensible methods to attempt to persuade either the court or the jury, and it is reasonably probable the defendant would have fared better had the misconduct not

occurred (*id*. at p. 595; *People v. Milner* (1988) 45 Cal.3d 227, 245).  Furthermore, to raise prosecutorial misconduct on appeal, a defendant must timely and specifically object and request a proper admonition.  (*People v. Hill* (1998) 17 Cal.4th 800, 820 (*Hill*); *People v. Pitts* (1990) 223 Cal.App.3d 606, 691-692.)  There are several exceptions to this general rule, however, unless the failure to do so is excused:  if an objection or request for admonition would have been futile; if an admonition would not have cured the harm caused by the misconduct; or if " 'the court immediately overrules an objection to alleged prosecutorial misconduct [and as a consequence] the defendant has no opportunity to make such a request.' "  (*Hill*, *supra*, 17 Cal.4th at p. 820.)

Here, defendant did not make a timely and specific objection on the grounds of prosecutorial misconduct to any of the conduct about which he now complains.  Nor did he request the jury be admonished to disregard any impropriety.  Defendant makes no attempt to bring himself within any of the exceptions to the forfeiture rule identified in *Hill*.  Accordingly, defendant has forfeited his claims of misconduct.  Even assuming defendant had preserved his prosecutorial misconduct claims, however, we find they lack merit.

## *Doyle* Error

The due process clause of the Fourteenth Amendment to the United States Constitution prohibits a prosecutor from impeaching a defendant's trial testimony with evidence that the defendant was silent after being advised of his rights under *Miranda*. (*Doyle v. Ohio* (1976) 426 U.S. 610, 618 [49 L.Ed.2d 91, 98] (*Doyle*); *People v. Earp* (1999) 20 Cal.4th 826, 856; *People v. Champion* (2005) 134 Cal.App.4th 1440, 1447 (*Champion*).)  On the other hand, "if no *Miranda* warning has been given, evidence of the accused's silence is admissible to impeach a defense offered for the first time at trial." (*People v. O'Sullivan* (1990) 217 Cal.App.3d 237, 244; see *Fletcher v. Weir* (1982) 455 U.S. 603, 605-607 [71 L.Ed.2d 490, 493-494] (*Fletcher*); *Jenkins v. Anderson* (1980) 447 U.S. 231, 239-240 [65 L.Ed.2d 86, 95-96]; *Earp*, *supra*, 20 Cal.4th at pp. 856-857;

5

*People v. Delgado* (1992) 10 Cal.App.4th 1837, 1842 (*Delgado*).) " 'The prosecutor cannot use the defendant's invocation of his right to remain silent or refusal to answer questions as evidence against him. [Citations.] Particularly, the defendant's silence may not be used to impeach his credibility. [Citations.] [¶] To establish a violation of due process under *Doyle*, the defendant must show that the prosecution inappropriately used his postarrest silence for impeachment purposes and the trial court permitted the prosecution to engage in such inquiry or argument.' (*People v. Champion* (2005) 134 Cal.App.4th 1440, 1448.) 'To assess whether these questions constitute *Doyle* error, we ask whether the prosecutor referred to the defendant's post-arrest silence so that the jury would draw "inferences of guilt from [the] defendant's decision to remain silent after . . . arrest." [Citation.]' (*Smith v. Jones* (6th Cir. 2009) 326 Fed.Appx. 324, 330.)" (*People v. Hollinquest* (2010) 190 Cal.App.4th 1534, 1555-1556.)

"Doyle bars the use against a criminal defendant of silence maintained after receipt of governmental assurances." (*Anderson v. Charles* (1980) 447 U.S. 404, 408 [65 L.Ed.2d 222, 226] (*Anderson*).) *Doyle* does not, however, allow the defendant to use his right to remain silent "as a sword to cut off the prosecution's 'fair response' to the evidence or argument of the defendant. (*United States* v. *Robinson* (1988) 485 U.S. 25, 32 [99 L.Ed.2d 23].)" (*People v. Austin* (1994) 23 Cal.App.4th 1596, 1612, disapproved on a different point by *People v. Palmer* (2001) 24 Cal.4th 856, 861-865.) Thus, *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements (*Anderson*, *supra*, 447 U.S. at p. 408 [65 L.Ed.2d at p. 226]; *People v. Collins* (2010) 49 Cal.4th 175, 203 (*Collins*)), or to inquiry focused on rebutting a defendant's claims, or on a fair response to the defendant's arguments (see *Champion*, *supra*, 134 Cal.App.4th at pp. 1450-1451).

### Cross-Examination of Defendant

On direct examination, defendant testified that when Tumelson removed the bag of methamphetamine from his pocket, he told Tumelson he had borrowed the pants. He

6

confirmed this testimony on cross-examination but also testified he did not provide information on the identity of the owner of the pants. Initially, he testified he did not feel there was a need to give Tumelson that information. Later he testified, "I was already under arrest. I figured that I had the choice to stay silent until I talked to a lawyer. I just -- that was just my first decision." Defendant complains specifically about the following portions of cross-examination occurring after that answer:

"Q    Now, today's the first law enforcement's hearing of the name of the person who owns the pants; is that correct?

"MR. AHART [defense counsel]:  Objection.  It calls for speculation, Your Honor.

"THE COURT:  Phrase it differently.

"MR. POWELL [the prosecutor]:  Sure.

"Q    BY MR. POWELL:  Did you ever notify the police of the person who owned these pants?

"MR. AHART:  Objection, Your Honor.  The same issue that we approached on moments ago.[3]

"THE COURT:  Sustained.

"Q    BY MR. POWELL:  Now, [defendant], how are we going to confirm your story?

"MR. AHART:  Objection.  It's vague and ambiguous.

"THE COURT:  And argumentative.  Sustained.

"Q    BY MR. POWELL:  Now, you were released from custody after you were arrested on the possession; right?

"MR. AHART:  Objection.  Relevance.

"THE COURT:  Overruled.

---

**3** There was an earlier off-the-record discussion that was not reported.

"THE WITNESS:  Yes, I was.

"Q     BY MR. POWELL:  And did you then run to the police department and give them the information?

"MR. AHART:  Objection.  Same issue.

"THE COURT:  Sustained."

### Analysis

Defendant acknowledges he did not expressly invoke his right to remain silent at the scene of the arrest but claims his testimony made clear he was relying on that right, and in spite of that clarity, the prosecutor continued to attempt to elicit testimony on defendant's postarrest silence.  Given that defendant chose to speak to officers at the scene and therefore did not remain silent, we cannot find he had implicitly invoked his *Miranda* rights.  Moreover, where, as here, *Miranda* warnings have not been given, it is not a violation of "due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand."  (*Fletcher*, *supra*, 455 U.S. at p. 607 [71 L.Ed.2d at p. 494].)  There is no *Doyle* error.  (*Delgado*, *supra*, 10 Cal.App.4th at p. 1842.)

Defendant also claims the prosecutor committed misconduct under *Doyle* when he attempted to elicit testimony from defendant that he had never told law enforcement the identity of the person whose pants he had borrowed, implicitly including his silence after defendant invoked his *Miranda* rights.[4]  But defense counsel objected to each of these questions and the objections were sustained.  In other words, the trial court did not permit use of defendant's postarrest silence.  Where the trial court does not permit the use of defendant's postarrest silence, there is no *Doyle* violation.  (*Greer v. Miller* (1987) 483 U.S. 756, 764-765 [97 L.Ed.2d 618, 629-630]; *People v. Clark* (2011) 52 Cal.4th

---

[4]  The only indication in the record that defendant invoked his *Miranda* rights is defense counsel's statement at trial.

8

856, 959.) Furthermore, defendant fails to demonstrate that sustaining the objection was inadequate to remedy any impropriety. (See *People v. Tully* (2012) 54 Cal.4th 952, 1014 (*Tully*).)

Finally, the prosecutor did not refer to defendant's exercise of his right to remain silent; he simply asked why, if defendant's trial testimony were true, he did not identify the owner of the pants when he was interviewed immediately at the scene. "The questions were not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement." (*Anderson*, *supra*, 447 U.S. at p. 409 [65 L.Ed.2d at p. 227].) Accordingly, *Doyle* does not apply to the facts of this case. (*Anderson*, at p. 409 [65 L.Ed.2d at p. 227].)

### Rebuttal Testimony of Tumelson

The prosecutor sought to recall Tumelson in rebuttal, and defense counsel requested an offer of proof. The prosecutor indicated Tumelson would be testifying as to the reasons he did not further investigate the identity of the owner of the pants. The prosecutor clarified he did not intend to elicit any statements with respect to defendant's right to remain silent. Defense counsel argued that once defendant was arrested, he had the right to remain silent and his silence could not be used against him. The court noted there had been no invocation of that right while at the scene, and given defense counsel's assertion that Tumelson did not thoroughly investigate defendant's disclaimer and the ownership of the pants, evidence of defendant's postarrest, pre-*Miranda* silence was admissible. Defense counsel then argued: "If it goes one step further, I think we have a very -- a more significant issue . . . because [defendant] invoked his right to remain silent, and . . . the district attorney should be prohibited from asking those questions." The court responded, "*I don't think that's necessary*, but don't go there, Mr. Powell." (Italics added.) The court further advised the prosecutor, ". . . I think both the more persuasive approach and the one that doesn't arguably violate right to counsel or right to remain silent is what was said and done right there at the scene . . . when the defendant had

9

already decided that it was in his own self-interest to tell the officer whose pants they were to avoid being locked in with the bindle. . . . So I think that's the approach to take, not one that arguably violates other rights."

In his rebuttal testimony, Tumelson clarified he had not taken further investigative steps because defendant did not identify the owner of the pants. The pants appeared to fit defendant and disclaiming ownership of clothing in which contraband is found is a common occurrence, so Tumelson had no reason to believe the pants belonged to someone else and discounted defendant's statement. The prosecutor asked Tumelson, "Now, did he ever tell you who he had borrowed the pants from when he made that statement?" Tumelson answered, "He did not." Although defense counsel did not object, defendant now claims this question was a "direct violation of the court's earlier order not to 'go there.' " As above, defendant's failure to object forfeits the claim. (*Crew*, *supra*, 31 Cal.4th at p. 839.) Moreover, defendant misreads the record. The trial court did not issue a ruling precluding counsel from asking questions on a "prohibited issue." In fact, the trial court expressly declined to do so stating, "I don't think that's necessary." The subsequent caution to the prosecutor to not "go there" was not an order, ruling, or a granting of a motion. Indeed, that defense counsel did not object to the question at that time suggests he did not believe the question violated a court ruling. (See *Tully*, *supra*, 54 Cal.4th at p. 1013.)

Also, as above, the prosecutor's question makes no reference to defendant's exercise of his right to remain silent and was not designed to elicit an inference of guilt from the invocation of that right. Viewed in its context, the question was part of a series of questions designed to rebut defendant's claim that Tumelson's investigation was inadequate and cursory. The focus of the prosecutor's inquiry was not defendant's silence as an indicator of guilt, but the reason Tumelson did not further pursue the ownership of the pants; that is, it rebutted defendant's attack on Tumelson. This is not

10

*Doyle* error; it is a fair response to defendant's claim. (*Champion*, *supra*, 134 Cal.App.4th at pp. 1450-1451.)

**Rebuttal Closing Argument**

Defendant also complains that the prosecutor compounded his misconduct by "revisiting the issue of [defendant's] post-arrest silence" in closing argument. In closing argument, defense counsel argued the prosecutor had "tried to hide" information from the jury by objecting when defense counsel tried to elicit testimony from Tumelson about whether defendant had told Tumelson the pants were not his. He argued that Tumelson had not further investigated defendant's claim by interviewing additional witnesses and looking at the evidence because he was a biased witness who believed he had enough evidence against defendant. He also argued the prosecutor could have brought in additional witnesses, including Branson, to testify whether he had lent defendant the pants. In response, the prosecutor argued defense counsel, as an experienced attorney, "knew . . . the only way that he was going to put that statement [from defendant about having borrowed the pants] in [evidence] is he had to put his client on the stand. [¶] . . . [¶] And, so, he's trying to insinuate that I did something wrong [by objecting]. That's fine, but why didn't he tell you the full story? Why didn't he get up here and tell you what really happened? . . . [¶] . . . [¶] He also got up here and had the gall, and I say gall, to tell you the D.A. had all these -- this opportunity to track these witnesses down whose pants they were. Well, since 11:35 yesterday, those names weren't known to anyone." After clarifying defendant did not have the burden to prove anything, the prosecutor continued, "[C]ounsel knew that I was going to get up here and ask someone questions . . . why didn't he call them, knowing that his client's testimony was the only word that he had? Why didn't he call this witness who gave him the pants? Why didn't he call the owner of the pants? . . . [¶] Because, up until yesterday, none of those facts were known to me. [¶] . . . [¶] The testimony was that the defendant never told anyone in law enforcement about any of these facts, and the reason he said: Figured I was being

11

arrested, didn't matter. That was March 3rd, 2010, quite some time ago. None of those facts were shared." There was no objection to this argument; as such, defendant's claim on appeal is forfeited.[5]

Furthermore, as above, "[t]he prosecutor was not taking unfair advantage of defendant's exercise of his right to remain silent as substantive evidence that he had a guilty conscience or was hiding something." (*Champion*, *supra*, 134 Cal.App.4th at pp. 1450-1451.) Rather, the rebuttal closing argument was in direct response to defendant's closing argument that Tumelson was a biased witness who had failed to properly investigate the case and that the prosecution should have brought in additional witnesses, including the purported owner of the pants. Once again, this is not *Doyle* error but a fair response to defendant's argument. (*Champion*, at pp. 1450-1451.)

## II

Defendant claims the prosecutor committed misconduct by disobeying a court order and eliciting evidence of statements made by defendant to Tumelson admitting he was a methamphetamine addict. He claims the statements were taken in violation of *Miranda*. We find no error.

**Additional Background**

The prosecutor sought to rebut defendant's claim he did not use methamphetamine, and had never seen it before Tumelson pulled the baggie out of his pocket, by introducing evidence that subsequent to the arrest, defendant admitted to Tumelson that he was addicted to methamphetamine. Defense counsel objected to the admission of these statements, arguing he was unaware of the exact timing and content of the statements, he did not know if defendant was represented by counsel when the

---

[5] During argument, defense counsel objected, claiming the argument was in violation of *Griffin v. California* (1965) 380 U.S. 609 [14 L.Ed.2d 106]. This objection was later withdrawn.

statements were made, and admission of the statements could infringe on defendant's right to counsel and right to remain silent. The court indicated the prosecutor would need to establish the conversations were voluntary and not investigatory. Specifically, if Tumelson were conducting a follow-up interview about the methamphetamine possession case, then the statements would not be admitted.

Tumelson testified the first conversation he had with defendant regarding methamphetamine use was on January 10, 2011. The prosecutor asked Tumelson, "What were the circumstances surrounding this conversation?" Tumelson answered, "Uh, had been dispatched to his mother's residence in Shasta Lake regarding a disturbance and [defendant's] behavior at his mother's residence, and during that contact, uhm, I had the opportunity to speak with [defendant] regarding his, uhm, argumentative and confrontational behavior, and he admitted to me that he had a methamphetamine addiction, and I made suggestions to him at that time that maybe he needed to get into a drug treatment program so that he would not continue to have the problems that he was repeatedly having with different people within the community." Defendant was not in custody or under arrest at the time of the conversation.

Tumelson had another contact with defendant regarding methamphetamine in February 2011. The prosecutor asked about the circumstances surrounding this conversation. Tumelson replied, "I was standing with [defendant], uhm, while the other officers were conducting the investigation, and again, while [defendant] was seated in the back of a patrol car I had asked him if he had gotten a hold [*sic*] of anybody or looked into getting into a treatment program." Defendant was not arrested at the time but was detained. Tumelson testified he asked the question because he wanted to determine if defendant had taken steps to seek help. There was no evidence admitted as to defendant's response to Tumelson's question.

13

**Analysis**

Although defense counsel made various objections throughout this examination and testimony on the bases of lack of foundation, Fifth Amendment, Sixth Amendment, relevance, and Evidence Code section 352, he made no objection on the basis of prosecutorial misconduct. As above, "trial counsel's failure to object in a timely manner to asserted prosecutorial misconduct also results in the forfeiture of the claim on appeal." (*People v. Dykes* (2009) 46 Cal.4th 731, 757.) Moreover, even if the issue was not forfeited, we find no error.

To protect the exercise of the privilege against self-incrimination, persons subject to custodial interrogation must be informed of certain rights, including the right to counsel, and once such a person invokes the right to counsel, the police must cease interrogation until counsel is provided or the suspect initiates further contact and makes it clear that he or she wishes to proceed without counsel. (*Miranda*, *supra*, 384 U.S. at pp. 473-474 [16 L.Ed.2d at p. 723]; *Edwards v. Arizona* (1981) 451 U.S. 477, 482, 484-485 [68 L.Ed.2d 378, 384, 386-387]; see also *Rhode Island v. Innis* (1980) 446 U.S. 291, 293 [64 L.Ed.2d 297, 302-303].) A statement taken in violation of these rules is inadmissible at trial in the prosecution's case-in-chief *but is* admissible to impeach the defendant's credibility as a witness, as long as the statement otherwise is voluntary. (*Harris v. New York* (1971) 401 U.S. 222, 224-226 [28 L.Ed.2d 1, 4-5]; *People v. Peevy* (1998) 17 Cal.4th 1184, 1187-1188; *People v. Brown* (1996) 42 Cal.App.4th 461, 471-474.) The impeachment evidence is properly admitted because "[t]he shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." (*Harris*, *supra*, 401 U.S. at p. 226 [28 L.Ed.2d at p. 5].)

A statement is voluntary when it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." (*Moran v. Burbine* (1986) 475 U.S. 412, 421 [89 L.Ed.2d 410, 421].) As noted by the Attorney General, there is only one

statement at issue here, defendant's January 2011 admission that he was a methamphetamine addict. No other statements by defendant were admitted into evidence. Defendant was not in custody during this conversation with Tumelson and there is no suggestion in this record that Tumelson resorted to any physical or psychological pressure, improper interrogation tactics, lengthy questioning, or intimidation to obtain defendant's statements. (*Ibid*.; *Colorado v. Connelly* (1986) 479 U.S. 157, 170 [93 L.Ed.2d 473, 486]; *Fare v. Michael C*. (1979) 442 U.S. 707, 726-727 [61 L.Ed.2d 197, 213-214].) Accordingly, we find the statement was voluntary.

As a voluntary statement, defendant's statement was admissible as impeachment evidence. Defendant testified he had never used methamphetamine and had seen it only on television shows. His January 2011 voluntary statement to Tumelson admitting he was addicted to methamphetamine was admissible to impeach that testimony. Eliciting this admissible testimony was not prosecutorial misconduct.

We have rejected all of defendant's claims of prosecutorial misconduct. Accordingly, we also reject his "claim that the cumulative impact of the alleged misconduct resulted in prejudice and deprived him of a fair trial." (*Collins*, *supra*, 49 Cal.4th at p. 208.)

## DISPOSITION

The judgment is affirmed.

       RAYE       , P. J.

We concur:

   NICHOLSON   , J.

   DUARTE     , J.